# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3081

No. 00-3086

_____

| | | |
|---|---|---|
| In re: Airline Ticket Commission Antitrust Litigation | * | |
| | * | |
| | * | |
| Travel Network, Ltd., a New Jersey corporation, individually and on behalf of all others similarly situated; | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| American Society of Travel Agents, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeals from the United States District |
| | * | Court for the District of Minnesota. |
| United Airlines, Inc.; American Airlines, Inc.; Continental Airlines, Inc.; Delta Air Lines, Inc.; Northwest Airlines, Inc.; USAirways, Inc., | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants, | * | |
| | * | |
| Trans World Airlines, Inc., | * | |
| | * | |
| Intervenor on Appeal. | * | |

_____

Submitted: May 17, 2001

Filed: October 15, 2001

_____

Before LOKEN, ROSS, and FAGG, Circuit Judges.
_____

ROSS, Circuit Judge.

These consolidated appeals arise from a settlement in an antitrust class action suit regarding commissions paid on airline tickets. The American Society of Travel Agents (ASTA), which was co-lead class counsel, and seven airlines, which were defendants, appeal from an order of the district court denying ASTA's motion for clarification and granting liaison class counsel's motion for a cy pres distribution of unclaimed settlement funds. We affirm in part and reverse and remand in part.

**BACKGROUND**

In February 1995, Delta Airlines issued a press release announcing that it was cutting commissions paid to travel agents by placing a $50 cap on domestic round-trip tickets and a $25 cap on domestic one-way tickets "issued by U.S. travel agents for travel within and between the Continental U.S., Alaska, Hawaii, Puerto Rico and the U. S. Virgin Islands." Shortly thereafter six other airlines issued similar press releases. Numerous travel agencies brought antitrust class action suits in various federal district courts across the country against the seven airlines, alleging violations of the Sherman Act, 15 U.S.C. §§ 1 and 2. ASTA, an organization representing about 16,000 independent travel agencies located in the continental United States, Hawaii, Alaska, Puerto Rico, and the U.S Virgin Islands, also brought an antitrust suit, seeking injunctive relief on behalf of its members. The Judicial Panel on Multi-District Litigation consolidated the cases and transferred them to the United States District Court for the District of Minnesota.

Pursuant to a stipulation, in May 1995 the district court certified the amended and consolidated complaint as a class action, defining the class as:

All travel agencies in the United States who, at any time from February 10, 1995, to the present, issued tickets . . . for travel on any of the defendant airlines within and between the continental United States, Alaska, Hawaii, Puerto Rico and the U.S. Virgin Islands.

(emphasis added).

In June 1995, the plaintiffs settled with one of the defendants, Trans World Airlines. Class counsel retained a claims administration firm to assist in the mailing of notices of the proposed settlement to class members. ASTA provided the firm with a list of travel agencies based on domestic data from the Airline Reporting Corporation (ARC), which is owned by the airlines. Because ARC 's domestic data was only from travel agencies in the fifty states and the District of Columbia, no notices were mailed to travel agencies in Puerto Rico and the U.S. Virgin Islands.

In 1996, the plaintiffs agreed to settle with the remaining defendants. The proposed settlement required the airlines to pay class members approximately $86 million, less costs and attorneys fees, to be allocated on a pro rata share based on domestic ticket sales. The term "Class" was defined as in the class certification order set forth above. As before, ASTA provided a list of travel agencies based on the ARC data to the claims administrator, who mailed notices of the proposed settlement to over 36,000 travel agencies located in the fifty states and the District of Columbia. A summary notice of the proposed settlement was posted electronically on the airlines computer reservation system and reprinted in several trade publications. ASTA surveyed its members concerning the proposed allocation plan, asking them to select from six alternatives to determine a class member's pro rata share of domestic ticket sales. Two-thirds of those responding favored an allocation plan utilizing ARC's domestic data. The claims administrator was familiar with ARC's domestic data and believed because the data was automated it would result in a cost-effective allocation.

-3-

After a fairness hearing, the district court approved the proposed plan, and ARC's domestic data was used in calculating the pro rata shares and the mailing of the checks. In December 1997, 25,082 settlement checks were mailed or wire transferred to travel agencies in the fifty states and the District of Columbia. Some checks were returned as undeliverable or never cashed, and despite efforts by counsel and the district court to locate the recipients, about $600,000 remained in the settlement fund.

In February 1998, a Puerto Rican travel agency, Gala Travel Agency, filed a class action on behalf of travel agents in the Commonwealth of Puerto Rico, alleging that the airlines had breached contracts by imposing the caps on Puerto Rican agencies. The complaint alleged that Puerto Rican agents were not included in the settlement of the instant case because they were international, not domestic, travel agencies, noting, among other things, that Puerto Rican agencies were accredited by the International Airlines Travel Agents Network. The airlines opposed class certification, asserting Puerto Rican travel agents were class members in the consolidated cases. In December 1998, the parties stipulated to a voluntary dismissal with prejudice of the suit.

In June 1999, ASTA filed a motion to clarify the class definition. ASTA, with the airlines in support, asserted that travel agencies in Puerto Rico and the U.S. Virgin Islands were class members and requested that the district court distribute the unclaimed funds to those agencies. Liaison class counsel opposed the motion, asserting the class definition excluded travel agencies in Puerto Rico and the U.S. Virgin Islands and requesting that the court make a cy pres distribution of the unclaimed funds to several Minnesota charities and law schools.

The district court denied ASTA's motion to clarify. The court noted that because a settlement agreement was essentially a contract, it would be guided by contract principles in interpreting the agreement. The court held that the plain and

ordinary meaning of the term "United States" referred only to the fifty states and the District of Columbia, relying on a dictionary definition and the average person's understanding of the term. The court also noted that the class definition first referred to the "United States" and later referred to "travel . . . within and between the continental United States, Alaska, Hawaii, Puerto Rico, and the U.S. Virgin Islands." The court reasoned that if the first reference included Puerto Rico and the U.S. Virgin Islands, then there would have been no need for the second reference. To give effect to all the terms, the court further reasoned that the first reference to "United States" referred to the location of the class members and the second reference was to the location of affected travel.

In any event, the court went on to state that even if the term were ambiguous, the parties' course of conduct showed that they did not intend to include travel agents in Puerto Rico and the U.S. Virgin Islands as class members. Indeed, the court stated that it "beggar[ed] [its] imagination to consider that the parties had in mind another entire block of travel agencies, but simply failed to bring them to the Court's attention until after all of the identifiable class members had been found and had been paid their settlement sums." The court also noted that it was ASTA's counsel who had provided the claims administrator with the list of class members based on ARC domestic data and that the data was used in calculating class members' pro rata share. The court found it "particularly persuasive" that, had all the class members been identified and located, no funds would have remained, noting it had participated, along with class counsel, in locating class members using the ARC data. The court then ordered a cy pres distribution to liaison counsel's proposed list of recipients, including three Minnesota law schools and several Minnesota charities.

**DISCUSSION**

Meaning of "United States"

On appeal, ASTA and the airlines argue that the district court erred in holding that the term "United States" excluded Puerto Rico and the U.S. Virgin Islands.

ASTA argues that this court should review the district court's certification order, rather than the settlement agreement. It appears that appellants have waived this argument. In Sweat v. City of Fort Smith, No. 00-2403, 2001 WL 1033604, at *3 (8th Cir. Sept. 11, 2001), this court held that appellants had waived an issue regarding a class action certification order, noting, among other things, that "[i]f the appellants were confused about the implications of the certification order . . . [they] should have inquired of the district court at that time." Id. Instead, "they failed to seek clarification . . . and attempted to challenge the order for the first time some four years later." Id. The same could be said here. Although we note that in Sweat, appellants also had failed to raise the issue in a prior appeal, id., we need not definitively decide whether appellants have waived review of the certification order. In this case, the definition of the class in the settlement agreement was the same as in the certification order. Moreover, absent an ambiguity, we review the district court's interpretation of a settlement agreement de novo. Gilbert v. Monsanto Co., 216 F.3d 695, 700 (8th Cir. 2000).

The parties agree that "[a] settlement agreement is a contract and is to be construed in accordance with contract principles[,]" and that Minnesota law applies. Michalski v. Bank of America Ariz., 66 F.3d 993, 996 (8th Cir. 1995). However, appellants argue that the district court erred in relying on a lay person's understanding and a dictionary definition of the term "United States." Instead, they assert that because the case involved the airlines and commissions paid on airline tickets, the court should have looked to the definition of the term in the Federal Aviation Act, which defines the United States as "the States of the United States, the District of Columbia, and the territories and possessions of the United States, including the territorial sea and the overlying airspace." 49 U.S.C. § 40102(a)(41).

The district court did not err. It is true that "[p]arties to a contract are . . . free to assign technical meanings to the words they employ." Lang v. General Ins. Co. of America , 127 N.W.2d 541, 545 (Minn. 1964). However, as the court found and as

discussed below, there is no evidence that the parties intended to do so. See In re Popkin & Stern, 196 F.3d 933, 939 (8th Cir. 1999) ("Unless it plainly appears that a different definition is intended, the meaning of a term in a contract will be the lay person's definition of that term.") (applying Missouri law). Thus, the court correctly gave the contract language its plain and ordinary meaning. Indeed, it heeded the admonition that a court should not ignore the common and popular usage of a contract term. Metropolitan Prop. & Cas. Ins. Co. & Affiliates v. Miller, 589 N.W.2d 297, 299 (Minn. 1999). Moreover, contrary to appellants' argument, the court read the term in context and gave meaning to every term in the definition, as is required. See Brookfield Trade Ctr. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn. 1998). We also note appellants do not advocate that class members included travel agencies in United States territories and possessions, such as Guam or the American Samoa. Liaison class counsel also notes Puerto Rico is a Commonwealth, not a territory or possession. See Romero v. United States, 38 F.3d 1204, 1208 (Fed. Cir. 1994) (noting "the unique and historically ill-defined Commonwealth status of Puerto Rico").

In support of their argument that the term "United States" is ambiguous, appellants cite several United States statutes, some which expressly include Puerto Rico and some which expressly exclude it. Compare e.g., 26 U.S.C. § 7701(a)(9) ("only the States and the District of Columbia") with 7 U.S.C. § 1561(a)(1) ("the several States, District of Columbia, and Puerto Rico"). It seems to us that if the parties intended to include Puerto Rico and the U.S. Virgin Islands, they knew the language to do so. Cf. Davila-Perez v. Lockheed Martin Corp., 202 F.3d 464, 468 (1st. Cir. 2000) ("there is no doubt that Congress knew the language necessary to include Puerto Rico as a state").

In any event, even if the term "United States" were ambiguous, we would affirm the district court's finding that the parties did not intend to include travel agencies in Puerto Rico and the U.S. Virgin Islands. "If a contract's terms are

ambiguous, the court will consider extrinsic evidence, and construction of the contract becomes a question of fact." Barry v. Barry, 78 F.3d 375, 382 (8th Cir. 1996) (applying Minnesota law). We review the court's findings concerning the parties' intent for clear error. Barker v. Ceridian Corp., 193 F.3d 976, 981 (8th Cir. 1999), cert. denied, 529 U.S. 1109 (2000).

The district court's finding is not clearly erroneous. As the court noted, the first time that appellants asserted that the travel agencies were part of the class was four years after the class certification and nearly two years after the settlement. Indeed, the court expressly found incredulous appellants' assertion that from the beginning they assumed that travel agencies in Puerto Rico and the U.S. Virgin Islands were included in the class, stating: "It beggars the Court's imagination to consider that the parties had in mind another entire block of travel agencies, but simply failed to bring them to the Court's attention until after all of the identifiable class members had been found and had been paid their settlement sums." We have repeatedly held that a district court's "credibility findings are well-nigh unreviewable, so long as the findings are not internally inconsistent or based on testimony that is incoherent, implausible, or contradicted by objective evidence in the case." United States v. Jones, 254 F.3d 692, 695 (8th Cir. 2001). We note that "'few persons are in a better position to understand the meaning of a [settlement agreement] than the district judge who oversaw and approved it.'" W. Alton Jones Found. v. Chevron U.S.A., Inc., 97 F.3d 29, 33 (7th Cir. 1996) (quoting United States v. Local 359, United Seafood Workers, 55 F.3d 64, 68 (2d Cir. 1995)).

In this case, the district court's credibility finding is well supported. Appellants' delay in arguing that travel agencies in Puerto Rico and the U.S. Virgin Islands were class members "is relevant and persuasive evidence that the parties to this case never considered that [those agencies] would be included in the class." Id. (internal quotation omitted). "We see no reason why, if [appellants] believed all along that [the agencies] w[ere] included within the class," they waited so long to

alert the court.  Id. at 34.  After all, as to the mailing of class notices, it was ASTA which provided the claims administrator the list of class members based on the ARC data and, pursuant to the wishes of  ASTA's members, the ARC domestic data was utilized to calculate the pro rata share of domestic ticket sales of each class member. We also note that ARC was owned and operated by the airlines.  In addition, at the time it filed suit, the Puerto Rican travel agency did not believe it was part of the class in the multi-district case.  It did not file a motion to  intervene under Fed. R. Civ. P. 23(c)(1).  See  In re Fine Paper Antitrust Litig., 695 F.2d 494, 501 (3d Cir. 1982) (court properly disallowed intervention to amend the class description because "[a]lthough appellants knew or should have known long before settlement that their interest was not protected, they failed to take the necessary steps in their own behalf").

By waiting so long to raise the issue, appellants have wasted judicial resources. W. Alton Jones Found., 97 F.3d at 34.  Indeed, after the settlement checks were returned as undeliverable or uncashed, the court "expended large efforts, large personal efforts, to help [] find more people to receive the money," again using the ARC data.  Moreover, as appellants concede, if they and the district court had been successful in locating the over 30,000 agencies in the fifty states and the District of Columbia, there would have been no unclaimed funds.  In short, "throughout  the class action litigation, [appellants] took positions inconsistent with the idea that [Puerto Rican and U.S. Virgin Islands travel agencies] w[ere] included within the class definition."  Id. at 35.  As the Seventh Circuit stated, "'[t]he parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.'"  Id. at 33 (quoting Restatement (Second) of Contracts § 202 cmt. g). Thus, as the district court concluded, "[s]uch a chronology hardly suggests a contemporaneous understanding of the meaning of 'the United States' in accord with that suggested by ASTA and the defendant airlines at this time."

Cy Pres Distribution

ASTA and the airlines also challenge the district court's cy pres distribution of the unclaimed funds to Minnesota law schools and charities. We review a district court's cy pres distribution for an abuse of discretion. Powell v. Georgia-Pac. Corp., 119 F.3d 703, 706 (8th Cir. 1997). "The term 'cy pres' is derived from the Norman French expression cy pres comme possible, which means 'as near as possible.'" Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 84 F.3d 451, 455 n.1 (D.C. Cir. 1996). The cy pres doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing "the next best use of the funds to satisfy the testator's intent as near as possible." Id. (internal quotation omitted). Courts have also utilized cy pres distributions where class members "are difficult to identify or where they change constantly," or where there are unclaimed funds. Powell, 119 F.3d at 706. "In these cases, the court, guided by the parties' original purpose, directs that the unclaimed funds be distributed 'for the indirect prospective benefit of the class.'" Id. (quoting 2 Newberg and A. Conte, Newberg on Class Actions, § 10.17 at 10-41 (3d ed. 1992)); see also Democratic Cent. Comm., 84 F.3d at 455 (cy pres distributions to "the next best class").

However, "cy pres distributions of unclaimed funds have been controversial in the courts of appeals." Powell, 119 F.3d at 706. Indeed, many distributions have been set aside as abuses of discretion. For example, in Six Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1304 (9th Cir. 1990), a farm labor class action, the district court ordered a cy pres distribution of unclaimed funds to a foundation for distribution in Mexico. Although acknowledging that a district court has "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds[,]" the Ninth Circuit noted that a "court's choice among distribution options should be guided by the objectives of the underlying statute and the interests of the silent class members." Id. at 1307. Although the appellate court held that a cy pres distribution was permissible, it set aside the lower court's distribution as

"inadequate to serve the goals of the statute and protect the interests of the silent class members."  Id. at 1312.

In In re Folding Carton Antitrust Litig., 744 F.2d 1252, 1254 (7th Cir. 1984), an antitrust class action case, the district court ordered a cy pres distribution for funding of an antitrust research foundation, which had been recommended by several class counsel.  The Seventh Circuit set it aside as an abuse of discretion, noting the particular foundation was unneeded.  Id. On remand, the district court adopted the parties' proposal for a pro rata distribution to previously- paid class members and to local law schools.  Again, the Seventh Circuit set the distribution aside and remanded the case.  Houck v. Folding Carton Admin. Comm., 881 F.2d 494, 502 (7th Cir. 1989), cert. denied, 494 U.S. 1026 (1990).  Although the appellate court noted that "[u]pon remand, the cy pres doctrine remain[ed] an appropriate solution for the exercise of sound discretion by the district court," the Seventh Circuit further noted that because the case was a nationwide one, the district court could "consider to some degree a broader nationwide use of its cy pres discretion."  Id.  On remand, the district court ordered a cy pres distribution to establish a national public interest fellowship program.  In an unpublished opinion, the Seventh Circuit affirmed.  1991 WL 88534 (7th Cir. 1991).  See also Wilson v. Southwestern Airlines, Inc., 880 F.2d 807, 809 (5th Cir. 1989) (setting aside cy pres distribution because court failed to balance all interests).

In contrast, in Powell, this court upheld a distribution in a class action race discrimination case to fund a scholarship program for minority students in areas where the class members lived.  Powell, 119 F.3d at 706.  This court noted that the district court had "carefully weighed all of the considerations and tailored its remedy to reflect the parties' original intention regarding unclaimed funds. "  Id. at 707.  We also noted the "program balance[d] the equitable interests involved in the case with the need to conserve judicial resources."  Id.

-11-

In this case, appellants argue that even if travel agencies in Puerto Rico and the U.S. Virgin Islands were not class members, since they were affected by the commission caps, they were "the next best class." At oral argument, we asked the parties whether travel agencies in other United States territories and possessions, such as Guam or American Samoa, which were affected by the caps also would be entitled to a cy pres distribution. The parties suggested that they would be entitled, but appellee suggested that there may be problems in identifying such parties. We need not decide at this time whether any such problems exist. Although we understand the district court's frustration with this case, there is no indication that in selecting the recipients of the unclaimed settlement funds, the court "carefully weighed all of the considerations." Id. Indeed, the court made no findings regarding the distributions or even discussed the policy behind the cy pres doctrine. Rather, it merely adopted liaison class counsel's proposed list of mostly local recipients, which had no relationship to the class action suit.

Accordingly we remand this case to the district court to make a distribution or distributions more closely related to the origin of this nation-wide class action case concerning caps on commissions paid to travel agencies. See In re Agent Orange Prod. Liab. Litig., 818 F.2d 179, 186 (2d Cir.) (instructing district court on remand to make cy pres distributions for uses "consistent with the nature of the underlying action"), cert. denied, 487 U.S. 1234 (1987). Thus, we affirm in part and reverse in part. We set aside the cy pres distribution and remand to the district court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.