# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 02-1639

_____

| | | |
|---|---|---|
| In re: Airline Ticket Commission Antitrust Litigation<br><br>_____ | * <br> * <br> * <br> * <br> * | |
| Travel Network, Ltd., a New Jersey corporation, individually and on behalf of all others similarly situated, | * <br> * <br> * <br> * | |
| Plaintiff/Appellee, | * <br> * | |
| American Society of Travel Agents, | * <br> * | Appeal from the United States District Court for the |
| Plaintiff/Appellant, | * | District of Minnesota. |
| National Association for Public Interest Law, | * <br> * <br> * <br> * <br> * | |
| Intervenor on Appeal, | * <br> * | |
| v. | * <br> * | |
| United Air Lines, Inc.; American Airlines, Inc.; Continental Airlines, Inc.; Delta Air Lines, Inc.; Northwest Airlines, Inc.; USAirways, Inc., | * <br> * <br> * <br> * <br> * <br> * | |
| Defendants. | * | |

_____

Submitted:  September 9, 2002

Filed:   October 4, 2002
_____

Before LOKEN, FAGG, and RILEY, Circuit Judges.
_____

RILEY, Circuit Judge.

This class action lawsuit was filed against several major airlines by travel agencies, individual travel agents, and the American Society of Travel Agents (ASTA).  The case settled in 1996.  After the class members were paid under the settlement agreement, some settlement funds remained unclaimed and undistributed.  The district court initially ordered a *cy pres* distribution of these funds to several organizations, including educational and charitable institutions in the vicinity of Minneapolis, Minnesota.  We reversed that decision on appeal.  In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d 619 (8th Cir. 2001).  When the case was remanded, the district court ordered the funds distributed to the National Association for Public Interest Law (NAPIL).  Today we reverse that decision as well.  We remand the case for a distribution of the unclaimed funds to travel agencies in Puerto Rico and the U.S. Virgin Islands and, if necessary, further distribution consistent with our two opinions in this case.

## I.    BACKGROUND

The named plaintiffs brought this class action lawsuit on behalf of travel agencies and agents, alleging violations of the Sherman Antitrust Act, 15 U.S.C. §§ 1 & 2.  They claimed seven major airlines colluded in order to place caps on commissions paid to travel agents.  By 1996, all of the original parties had settled the lawsuit.  Because the district court could not locate all of the class members,

-2-

approximately $500,000 of the settlement funds was left undistributed. (That figure has now grown to approximately $600,000.)

ASTA proposed that the district court distribute the unclaimed funds to 578 travel agencies in Puerto Rico and the U.S. Virgin Islands. ASTA first argued that the travel agencies were included in the class of plaintiffs, which the class certification order limited to "travel agencies in the United States." ASTA also argued that if the Puerto Rican and U.S. Virgin Islands travel agencies were not class members, the district court should nevertheless distribute the unclaimed funds to them, as the next best recipients, under the doctrine of *cy pres*. The district court rejected both arguments and ordered that the unclaimed funds be distributed to a list of organizations recommended by liaison counsel. This list included three Minnesota law schools and several Minnesota charities.

ASTA appealed, and we affirmed, in part, and reversed, in part. In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d at 626. We affirmed the district court's determination that the travel agencies in Puerto Rico and the U.S. Virgin Islands were not part of the class. Id. at 622-25. However, we set aside the *cy pres* award. Id. at 626. In reversing, we considered ASTA's proposal that the funds be distributed to agencies in Puerto Rico and the U.S. Virgin Islands, but wondered "whether travel agencies in other United States territories and possessions, such as Guam or American Samoa, which were affected by the caps also would be entitled to a cy pres distribution." Id. Finding the district court had not "carefully weighed all of the considerations" necessary to tailor an award to the parties' original intentions, we remanded the case for "a distribution or distributions more closely related to the origin of this nation-wide class action case concerning caps on commissions paid to travel agencies." Id.

On remand, ASTA again sought to have the funds distributed to travel agencies in Puerto Rico and the U.S. Virgin Islands. Counsel for ASTA also informed the

district court of ASTA's "current understanding that travel agents in Guam and American Samoa were not in fact subject to the airline commission caps." ASTA suggested that counsel for the airlines could confirm its understanding. No contrary evidence was offered, and the district court did not otherwise receive any information contradicting this statement.

NAPIL also sought to receive the funds.[1] In its application, NAPIL explained its commitment to public interest law and described some of its programs. NAPIL also documented its success in obtaining *cy pres* distributions from other courts. NAPIL did not, however, draw any connection between its purposes and the subject matter of this class action lawsuit.

The district court decided to distribute all of the unclaimed funds to NAPIL. The court did not address ASTA's statement that agents in Guam and American Samoa were not subject to the caps. Instead, it held ASTA's proposal would be "an inappropriate distribution for reasons previously discussed and approved by the Court of Appeals in its opinion." Determining that "there simply are no immediate, obvious, or automatic entities clearly entitled to the funds," the court awarded the funds to NAPIL. The district court ordered the money "be used to support attorneys providing legal services to low income clients by paying the interest on grant recipients' outstanding student loans."

ASTA now appeals the district court's award to NAPIL, arguing that the district court abused its discretion and did not follow our mandate. NAPIL has intervened on appeal. First, NAPIL contends ASTA lacks standing to assert the interests of

---

[1]Hamline University School of Law (Hamline) applied for the unclaimed funds as well. Hamline proposed to use the funds for yearly symposia on the continuing legal implications of the September 11, 2001, terrorist attacks and antitrust issues facing the airlines. The district court did not award any of the unclaimed funds to Hamline. Hamline has not appealed that decision.

travel agencies in Puerto Rico and the U.S. Virgin Islands. Second, NAPIL contends those travel agencies are not appropriate recipients of the funds. Finally, NAPIL concludes that its own nationwide work in the area of public interest law makes it a suitable *cy pres* recipient. Neither the defendant airlines nor any of the other plaintiffs have taken a position on who should receive the unclaimed funds.

## II.    DISCUSSION
### A.    Standing of ASTA

As an initial matter, we reject NAPIL's assertion that ASTA lacks standing to contest the distribution. According to the complaint, ASTA has members in "about 16,000 locations throughout the continental United States, Hawaii, Alaska, *Puerto Rico*, and the *U.S. Virgin Islands*." (The emphasis is our own.) ASTA has standing to bring this appeal on behalf of its members in Puerto Rico and the Virgin Islands, whose individual participation is not required to resolve the *cy pres* issue. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343-44 (1977).

### B.    The *Cy Pres* Distribution

We generally review a district court's *cy pres* distribution for an abuse of discretion. In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d at 625. On remand, however, the district court's discretion is limited by the terms of our prior mandate, and we retain authority to determine whether the terms of the mandate were scrupulously carried out. See Duncan Energy Co. v. United States Forest Serv., 109 F.3d 497, 499 (8th Cir. 1997).

The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means "as near as possible." In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d at 625 (citing Democratic Cent. Comm. v. Washington Metro. Area Transit Comm'n, 84 F.3d 451, 455 n.1 (D.C. Cir. 1996)). The doctrine originated to save testamentary charitable gifts that would otherwise fail. See Note, Damage Distribution in Class Actions: The Cy Pres Remedy, 39 U. Chi.

L. Rev. 448, 452 (1972). Under *cy pres*, if the testator had a general charitable intent, the court will look for an alternate recipient that will best serve the gift's original purpose. See id. In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds. In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated. See In re Airline Ticket Comm'n Antitrust Litig., 268 F.3d at 625-26.

In Powell v. Georgia-Pacific Corporation, 119 F.3d 703 (8th Cir. 1997), we approved a *cy pres* distribution that is instructive in this case. Powell involved a class of African American workers who alleged the Georgia-Pacific Corporation had violated their rights under Title VII. Id. at 704. After the class members were compensated, nearly $1 million in settlement funds remained. Id. at 704-05. Rather than distribute the remaining funds to class members, the district court ordered the parties to design a scholarship program to be administered by the Georgia-Pacific Foundation. Id. at 705. Under the program, scholarships were to be awarded over ten years to 112 African American high school students in the three counties in Arkansas and three parishes in Louisiana where most of the class members lived, with the remaining proceeds going to the United Negro College Fund. Id. Not only did the scholarship program carry out the plaintiffs' desire to have scholarships benefit their younger relatives, it addressed the subject matter of the lawsuit – the employment opportunities available to African Americans living near Georgia-Pacific's facilities in Crossett, Arkansas. See id. at 706-07; Powell v. Georgia-Pacific Corp., 843 F. Supp. 491, 494 (W.D. Ark. 1994).

The last time this case was before us, we drew upon Powell to emphasize the importance of tailoring a *cy pres* distribution to the nature of the underlying lawsuit. In reversing the district court's initial distribution of funds to local charities, we suggested that the court failed to consider the full geographic scope of the case.

Thus, we quoted from the Seventh Circuit's decision in <u>Houck v. Folding Carton Admin. Comm.</u>, 881 F.2d 494, 502 (7th Cir. 1989), which remanded for the district court to "consider to some degree a broader nationwide use of its *cy pres* discretion" because the case involved a nationwide harm. <u>In re Airline Ticket Comm'n Antitrust Litig.</u>, 268 F.3d at 626. In addition, we said nothing to discourage a distribution to travel agencies in Puerto Rico and the U.S. Virgin Islands, which labored under the same allegedly unlawful caps as the class members in the United States.[2] Rather, we pointed out that travel agencies in other U.S. territories and possessions, such as Guam and American Samoa, might also be entitled to a portion of the unclaimed funds. <u>Id.</u> In light of this reasoning, we remanded the case for "a distribution or distributions more closely related to the origin of this nation-wide class action." <u>Id.</u>

The district court did not fully carry out our mandate. Considering the evidence and the options before the district court, travel agencies in Puerto Rico and the U.S. Virgin Islands were clearly the next best recipients of the funds. The lawsuit challenged the caps on ticket commissions for flights "within and between the continental U.S., Alaska, Hawaii, Puerto Rico, and the U.S. Virgin Islands." Travel agencies in Puerto Rico and the U.S. Virgin Islands, although not members of the class, were subject to the same allegedly unlawful caps. A *cy pres* distribution to these agencies would relate directly to the antitrust injury alleged in this lawsuit and settled by the parties. In contrast, as the district court appeared to recognize, NAPIL cannot claim any relation to the substantive issues in this case. Under these circumstances, following the equitable considerations underlying the *cy pres* doctrine and our prior mandate in this case, the district court should have ordered the unclaimed funds distributed, in the first instance, to the travel agencies proposed by ASTA.

---

[2]Our ruling that those travel agencies were not specific members of the class does not foreclose such a distribution. This much should be clear from <u>Powell</u>, where we approved a distribution of scholarship funds for the benefit of the younger relatives of class members. <u>See</u> <u>Powell</u>, 119 F.3d at 707.

## III. CONCLUSION

Accordingly, we reverse the district court's order and remand the case for a new *cy pres* distribution. The unclaimed funds should first be distributed on a proportional basis to the travel agencies in Puerto Rico and the U.S. Virgin Islands which were subject to the caps. We leave the details of this distribution to the district court's discretion. We also leave it to the district court to determine a recipient for any funds that may remain after distribution to these travel agencies. Such a recipient must relate, as nearly as possible, to the original purposes of the class action and its settlement. We recognize that the court's discretion in this regard must be guided, in part, by the amount of the remaining unclaimed funds and the costs of searching for another qualified recipient.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.