MURPHY, Circuit Judge,
dissenting.
I respectfully dissent because the record does not warrant the post hoc imposition of a new rule to this case. The district court’s cy pres order grew out of its active supervision of this consolidated litigation and was not inconsistent with our then existing precedents. Section 3.07 of the American Law Institute’s Principles of Aggregate Litigation, on which the majority relies, had neither been argued in the district court nor yet adopted by our court.
I.
In February 1999 the Judicial Panel on Multidistrict Litigation consolidated some 24 complaints that had been filed in four different districts in the fall of 1998 and then transferred them for case management to the United States District Court for the Eastern District of Missouri. The consolidated case was assigned to one of the district’s most experienced trial judges, the Honorable John F. Nangle, for his oversight and development. After several years of management Judge Nangle approved a $490 million global settlement agreement in September 2002 and lead counsel’s application for attorney fees in the next month.
NationsBank class representative David Oetting had objected to the proposed settlement in May 2002, claiming problems with the mediation process, the amount of the settlement, and payment of the settlement in cash rather than stock. He raised *1069 these issues in an appeal from the district court order approving the settlement. At that time Oetting did not raise any objection to either the fee award or to the provision that settlement funds remaining after one or two distributions “may be contributed as a donation to one or more non-sectarian, not-for-profit 501(c)(3) organizations as determined by the Court in its sole discretion ” (emphasis added). We affirmed the district court’s approval of the settlement. In re BankAmerica Sec. Litig., 350 F.3d 747, 752 (8th Cir.2003).
On June 14, 2004 Judge Nangle authorized the claims administrator to begin distributing the settlement funds. The distribution process was not without difficulties. Many class members had missed the initial deadline for filing complaints. The district court ordered class counsel to use a locator service to find some class members and made exceptions to allow several thousand late claims to be filed. The court observed that the NationsBank classes had had more problems with misidentified and late claims than the BankAmerica classes. Because many claimants failed to cash their checks on time, the court ordered that checks amounting to a total of over $1 million be reissued for good cause. Most of the reissued checks were for class members who had been customers of an investment management company which had failed to report their claims accurately.
Even after these exceptions in the distribution process, new problems surfaced. One year after the final claims filing deadline had passed, a brokerage firm discovered it had neglected to include in the claims notification process five million Nations-Bank shares held on behalf of its clients. After the district court declined to provide another exception to the final distribution deadline, class counsel negotiated an arrangement for the brokerage firm to pay its clients what they would have received from the settlement had their claims been timely. As Judge Nangle observed, the claims distribution process had been “inundated with inefficiency.”
The district court ordered a second distribution on June 16, 2008 involving $4.75 million remaining in the settlement fund. During that same month, a substantial fraud on the settlement fund was discovered involving an accountant formerly employed by the claims administrator, amounting to a total loss of $5,879,073.36. The district court stayed the second distribution on August 6, 2008 pending further investigation. Judge Nangle unfortunately died on August 24, 2008. The consolidated case was briefly transferred to two other judges; no recorded proceedings occurred during that period. Then on December 1, 2008 the case was reassigned to United States District Judge Carol Jackson.
After the fraud investigation was completed, Judge Jackson lifted the stay on April 15, 2009. She then oversaw the second distribution, which included orders to reissue various settlement checks for good cause. After restitution had been ordered in the criminal fraud case, class counsel were notified in March 2011 that immediate recovery for the settlement fund would be less than $300,000. The fund eventually received $295,290.27 in January 2013. The administrative cost for the second distribution amounted to $336,611.41, leaving $2.4 million remaining in the settlement fund.
Class counsel then moved in September 2012 for a cy pres distribution of the remaining funds and for additional attorney fees; Oetting opposed these motions. On June 24, 2013 the court ordered a cy pres distribution of the remaining settlement funds to Legal Services of Eastern Missouri, a legal aid organization whose work includes representing victims of fraud. It *1070 also awarded $98,114.34 in additional attorney fees to class counsel.
II.
We have explained that cy pres awards are appropriate “where class members ‘are difficult to identify or where they change constantly,’ or where there are unclaimed funds.” In re Airline Ticket Comm’n Antitrust Litig., 268 F.3d 619, 625 (8th Cir.2001) (“Airline Tickets I ”) (quoting Powell v. Georgia-Pacific Corp., 119 F.3d 703, 706 (8th Cir.1997)). In Powell, we reviewed for clear error a district court’s factual findings about such circumstances. 119 F.3d at 706.
The record in the case now before our court shows that the identification of class members for the two earlier distributions had been difficult, and that a good part of any additional distribution would have to be made to institutional investors holding stock on behalf of clients. Prior distribution efforts had encountered difficulties in locating and correctly processing claims for such class members. Meanwhile, years had passed since the settlement was reached, and $2.4 million remained in the settlement fund because some class members had failed to cash their checks and interest had accumulated on these unclaimed funds. Oetting himself had offered no evidence to show that a further distribution to the class would have been feasible at that time. On this record, the district court did not clearly err in determining that the remaining funds had been unclaimed and that individual members of the class were difficult to identify.
The district court found that additional factors favored a cy pres distribution. The parties’ settlement agreement, approved by the district court more than ten years earlier, provided that unclaimed funds remaining after one or two distributions “may be contributed as a donation to one or more non-sectarian, not-for-profit 501(c)(3) organizations as determined by the Court in its sole discretion.” There was no objection to this provision by any party or counsel at the time of settlement.
Class members who had submitted claims had already received the full compensation due under the settlement agreement, as in Powell, 119 F.3d at 705, where “each class member had been fully compensated according to the terms of the consent decree.” Many of those who were harmed by the underlying fraud had been beneficial owners of stock held by mutual funds and other institutional investors. Given that the beneficial ownership of such shares changes constantly and some 15 years had passed after the securities violations, the district court reasonably concluded that another distribution would not likely reach those who had been actually harmed. All these factors support the district court’s determination that the required circumstances for a cy pres distribution existed and that such a distribution would not be unwise or unfair to any party-
Counsel were involved in the consideration of an appropriate recipient for a cy pres distribution. Class counsel had suggested a distribution among three organizations: Legal Services of Eastern Missouri (LSEM), the Mathews Dickey Boys’ and Girls’ Club of St. Louis, and The Back-stoppers. In his response in the district court, Oetting opposed the suggested distributions to the Boys’ and Girls’ Club, a youth services organization, and The Back-stoppers, a group supporting families of fallen police officers, firefighters, and emergency medical technicians. Oetting argued that the work of these charities was not related to the subject matter of the case before the court. Nothing in the record at that stage, however, reflects any *1071 objection by Oetting to LSEM which was the third suggested recipient.[8]
In its cy pres order the district court carefully considered Oetting’s objections and the circuit precedent requiring it to “consider the full geographic scope of the case” as well as to “tailor[] a cy pres distribution to the nature of the underlying lawsuit.” In re Airline Ticket Comm’n Antitrust Litig., 307 F.3d 679, 683 (8th Cir.2002) (“Airline Tickets II”). Finding that the “multi-district litigation was transferred to this district because much of the harm suffered by the class was felt by individuals in the St. Louis region,” the district court found that distribution to an organization serving that area would be proper. Counsel had also pointed out that a St. Louis bank was a major predecessor in interest to NationsBank and that many of the individual stockholders of Nations-Bank resided in eastern Missouri. The district court found that a final distribution to LSEM would also be consistent with the nature of this securities fraud lawsuit since that organization serves victims of fraud. No party suggested any organization that would benefit class members more directly in these circumstances where the majority of shares were held by large investment firms. The district court found that distributions to the Boys’ and Girls’ Club or The Backstoppers would not be appropriate because their work did not focus on fraud.
We review the district court’s selection of LSEM as the recipient of the cy pres distribution for abuse of discretion. Powell, 119 F.3d at 707. The district court’s” careful application of existing precedent to the facts of this case shows no abuse of its discretion. Unlike the decision we reversed in Airline Tickets I, the district court here “carefully weighed all the [applicable] considerations” and made findings that supported its decision. 268 F.3d at 626. All parties were given an opportunity for comment and the district court provided adequate reasons for selecting LSEM as the cy pres recipient based on the nature of its work as well as its situs in the area where many class members were located when their losses occurred. The district court appropriately “tailored] [the] cy pres distribution to the nature of the underlying lawsuit,” as our precedent requires. Airline Tickets II, 307 F.3d at 683.
III.
Circuit courts which have adopted the American Law Institute’s preference for pro rata distributions to class members also recognize that cy pres awards are appropriate in certain cases. The First Circuit, for example, endorsed the Institute’s recommendation in In re Lwpron Marketing and Sales Practices Litigation while also affirming a cy pres distribution of surplus funds as provided in a settlement agreement. 677 F.3d 21, 25-26, 31 (1st Cir.2012). In reversing a cy pres distribution of surplus funds in Klier v. Elf Atochem North America, Inc., the Fifth Circuit acknowledged that such distributions are appropriate when contemplated in the parties’ agreement or when the class has already been adequately compensated. 658 F.3d 468, 475-76 (5th Cir.2011). While the Third Circuit agrees with the Institute that “cy pres distributions are most appropriate where further individual distributions are economically infeasible,” it has not so limited them and has recognized their potential role in settlements. In re Baby Prods. Antitrust Litig., 708 F.3d 163, 172-73 (3d Cir.2013).
*1072 Here, the district court’s decision to order a cy pres distribution was supported by the principles outlined in these cited circuit cases. Problems with the first two distributions made the feasibility of a third distribution doubtful. Moreover, the court found that class members who had submitted claims had been fully compensated according to the settlement agreement. Unlike in Klier, 658 F.3d at 477-78, this record does not show that a particular subclass was seriously undercompensated. Moreover, this settlement agreement had not only been approved by the district court, but also by our circuit court. In re BankAmerica Sec. Litig., 350 F.3d at 752. The settlement agreement authorized a cy pres distribution of unclaimed settlement funds remaining after one or two distributions to the class, and no objection was raised to that provision at the time of settlement.
The American Law Institute principles support the district court’s selection of LSEM as the remainder cy pres recipient. The Institute recommends that cy pres distributions be awarded to a recipient “whose interests reasonably approximate those being pursued by the class.” In applying the Institute’s recommendation, the First Circuit cited our precedent in Airline Tickets I and Airline Tickets II in examining whether or not a cy pres recipient reflected the geographic scope and subject matter of the litigation. In re Lupron, 677 F.3d at 33, 36.
In the case now before our court, the district court similarly selected a recipient whose geographic location related to the underlying securities fraud and whose mission included combating fraud. LSEM related “as nearly as possible, to the original purposes of the class action and its settlement,” taking into account “the amount of the remaining unclaimed funds and the costs of searching for another qualified recipient.” See Airline Tickets II, 307 F.3d at 683.
On this record the district court did not abuse its discretion by applying such criteria and selecting LSEM as a cy pres recipient.
rv.
For all these reasons, I respectfully dissent. The district court’s decision to distribute the remaining settlement funds cy pres to LSEM should be affirmed, as well as the award of additional attorney fees to the Green Jacobson law firm warranted by unforeseeable complexities in the settlement distribution.

. Oetting did offer belated suggestions of potential cy pres recipients in a surreply never accepted for filing. He also failed to raise any issue before the district court about notice to class members of the proposed cy pres distribution.