# United States Court of Appeals

## For the Eighth Circuit

_____

No. 16-2015

_____

Erin C. Caligiuri

*Objector - Appellant*

Devi Khoday; Danise Townsend, individually and on behalf of the class they represent

*Plaintiffs - Appellees*

v.

Symantec Corp.; Digital River, Inc.

*Defendants - Appellees*

_____

No. 16-2113

_____

Michelle Van De Voorde

*Objector - Appellant*

Devi Khoday; Danise Townsend, individually and on behalf of the class they represent

*Plaintiffs - Appellees*

v.

Symantec Corp.; Digital River, Inc.

*Defendants - Appellees*

_____

_____

Submitted: April 3, 2017
Filed: April 28, 2017

_____

Before GRUENDER, MURPHY, and KELLY, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Erin Caligiuri and Michelle Van de Voorde appeal the district court's[1] order approving a class action settlement and granting attorneys' fees and service awards. Caligiuri argues that the district court abused its discretion by (1) approving the settlement without knowing the final administrative costs or the final amount received by the class, (2) calculating attorneys' fees as a percentage of the total settlement fund without deducting administrative costs, (3) failing to ensure that unclaimed settlement funds would be used to benefit the class, and (4) granting service awards of $10,000 to each named plaintiff. Van de Voorde joins in Caligiuri's first two arguments. We affirm.

## I. BACKGROUND

In January 2011, plaintiffs filed a class action against Symantec Corp. and Digital River, Inc. (collectively "Symantec"). Symantec sold download insurance services costing between $4.99 and $16.99. These services allowed purchasers of

_____

[1]The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, adopting the report and recommendations of the Honorable Tony N. Leung, United States Magistrate Judge for the District of Minnesota.

Norton software to re-download the software beyond sixty days from the date of their purchase. Plaintiffs alleged that Symantec failed to disclose that consumers could use various free alternatives to re-download their Norton software. After the close of discovery, the district court certified a national class comprised of all persons in the United States who purchased the download insurance services between January 24, 2005 and March 10, 2011.

In April 2015, the parties agreed to settle. The settlement agreement provided that Symantec would pay $60,000,000 into a total settlement fund. In addition to this amount, Symantec agreed to pay each named plaintiff up to $7,500 of any service award approved by the court. Any amount over $7,500 would be paid from the total settlement fund. To receive reimbursement, class members were required to submit an electronic claim form within thirty days after entry of the final approval order. Class members who submitted an approved claim form would receive reimbursement from the net settlement fund, which consists of the total settlement fund after subtracting attorneys' fees and expenses, administrative costs, and any amount of service awards exceeding $7,500 per named plaintiff. Approved claimants would receive $50 for each purchase of download insurance services, subject to a *pro rata* reduction if the total claims exceeded the net settlement fund. If, after distribution of the approved claims, sufficient funds remained to pay at least $2 to each approved claimant, then such funds would be distributed to approved claimants in a second distribution on a *pro rata* basis. If any funds remained after distribution to approved claimants, the remaining funds would be distributed *cy pres* to the Electronic Frontier Foundation, a nonprofit digital rights group.

In October 2015, the district court preliminarily approved the settlement and appointed a settlement administrator. The settlement administrator's direct notice program provided notice of the settlement via e-mail to class members with a known e-mail address and via postcard to class members with an unknown or invalid e-mail

address. The e-mail and postcard notices directed the class members to a settlement website containing the electronic claim form.

The court scheduled a final fairness hearing for January 19, 2016. Before the hearing, the settlement administrator informed the court that, as of January 10, 2016, it had incurred $1,955,681.56 in costs and estimated that the total cost of the entire settlement administration would be approximately $2,420,681.56. It further stated that it already had received claims for 307,240 unique purchases.

In addition, class counsel filed a motion for attorneys' fees, expenses, and service awards. Class counsel requested an award of attorneys' fees of one-third of the total settlement fund, which amounts to $20,000,000, as well as reimbursement for $738,605.19 in litigation expenses. The motion also requested that the court grant service awards of $10,000 to each of the two named plaintiffs.

Class members Erin Caligiuri and Michelle Van de Voorde timely objected to the settlement and to class counsel's motion for attorneys' fees and service awards. After the fairness hearing, the district court granted final approval of the settlement, granted class counsel's motion for attorneys' fees, expenses, and service awards, and denied all objections. Caligiuri and Van de Voorde now appeal.

## II. DISCUSSION

### A. Settlement Approval

A district court may approve a class action settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). We review a district court's order approving a class action settlement for abuse of discretion. *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015). When reviewing for abuse of discretion, "we ask whether the District Court considered all relevant factors,

whether it was significantly influenced by an irrelevant factor, and whether in weighing the factors it committed a clear error of judgment." *Id.* (citation and alternations omitted).

Caligiuri and Van de Voorde do not challenge the fairness of the settlement terms. Rather, they argue that the district court abused its discretion by approving the settlement without knowing the final administrative costs or the final amount received by the class. They contend that the district court could not have determined the fairness, reasonableness, and adequacy of the settlement without knowing these amounts. On this basis alone, they request that we vacate the district court's settlement approval. We decline to do so.

First, although the district court did not know the final administrative costs, it was provided with an estimate. Before the fairness hearing, the settlement administrator informed the court that it estimated that the total cost of the entire settlement administration would be approximately $2,420,681.56. This estimate was subject to change because administrative costs would continue to accrue throughout the process of distributing the settlement, which would not begin until the court granted final approval. For this reason, it is common for courts to approve settlements after receiving only estimates of administrative costs. *See, e.g.*, *Huyer v. Buckley*, 849 F.3d 395, 397 (8th Cir. 2017) (noting that district court approved settlement where administrative costs were estimated at $3,250,000 and funds would be deducted from net settlement fund if actual costs exceeded that amount). As such, the district court was entitled to rely on the estimates provided by the settlement administrator when deciding whether to approve the settlement, and there is no indication that the court failed to consider that information.

Second, there likewise is no requirement for a court to know the final amount received by the class before approving a settlement. *See Hamilton v. SunTrust Mortg., Inc.*, No. 13-60749-civ, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (collecting

cases and concluding that "[d]istrict courts often grant final approval of class actions settlements before the final claims deadline"). Indeed, at the time the district court approved the settlement, it could have estimated that the net settlement fund would be approximately $36,835,713.25.[2] And the court knew that, under the terms of the settlement agreement, the vast majority of the net settlement fund would be distributed to class members, because if enough funds remain to distribute at least $2 to each approved claimant, then all remaining funds will be distributed to approved claimants on a *pro rata* basis. Thus, as the district court observed, "any *cy pres* distribution would likely be minimal, consisting only of uncashed checks and any funds remaining if a second distribution to the class would pay less than $2 to each approved claimant."

Furthermore, to the extent that Caligiuri and Van de Voorde suggest that there was a possibility that "the size of the individual awards compared to claimants' estimated damages" would be inadequate, *see In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 174 (3d Cir. 2013), their objection is baseless. As the district court noted, "it is anticipated that class members submitting valid claims will receive an amount in excess of their out-of-pocket loss—around $50 per claim, compared to the $4.99 to $16.99 purchase price." Indeed, the district court was reasonable to anticipate that each approved claimant would receive around $50 per purchase. Before the fairness hearing, the settlement administrator represented that it had received 307,240 claimed purchases, which would not be enough to trigger the *pro rata* reduction from $50. In addition, class counsel represented that it was "likely that most valid claimants will receive more than their out-of-pocket losses here." As it turns out, this prediction was correct. The settlement administrator has received claims for 732,049 purchases.

---

[2]This amount is calculated by subtracting from the $60,000,000 total settlement fund: $20,000,000 in attorneys' fees; $738,605.19 in reimbursement for litigation expenses; $2,420,681.56 in estimated administrative costs; and $5,000 representing the difference between the $7,500 per service award that Symantec agreed to pay separately and the $10,000 per award that the court actually granted.

According to class counsel, even if all of those claims are valid, each approved claimant will receive approximately $49.82 per purchase—an amount still well in excess of what each claimant paid.[3] Therefore, the district court did not abuse its discretion by approving the settlement without knowing the final administrative costs or the final amount received by the class, and we decline to vacate its order on this basis.

## B. Attorneys' Fees

"Decisions of the district court regarding attorney fees in a class action settlement will generally be set aside only upon a showing that the action amounted to an abuse of discretion." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1156 (8th Cir. 1999). "Courts utilize two main approaches to analyzing a request for attorney fees." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244 (8th Cir. 1996). "Under the 'lodestar' methodology, the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Id.* "Another method, the 'percentage of the benefit' approach, permits an award of fees that is equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation." *Id.* at 244-45. "It is within the discretion of the district court to choose which method to apply, as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case." *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622 (8th Cir. 2017) (quotations and citations omitted). Here, the court chose to apply the percentage-of-the-benefit approach and to award one-third of the total settlement fund.

---

[3]Class counsel reached this amount by factoring in over $360,000 in anticipated administrative expenses not included in the settlement administrator's original estimate.

Caligiuri and Van de Voorde argue that the district court abused its discretion by calculating attorneys' fees based on the total settlement fund because that fund includes administrative costs, which do not constitute a benefit to the class. As support, they cite the Seventh Circuit's decision in *Redman v. Radioshack Corp.*, which held that "administrative costs should not have been included in calculating the division of the spoils between class counsel and class members." 768 F.3d 622, 630 (7th Cir. 2014).

However, regardless of the Seventh Circuit's position, the rule in this circuit is that a district court may include "fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount.'" *Life Time Fitness*, 847 F.3d at 623. We review the district court's decision for an abuse of discretion, and we ask whether the appellant has made a "showing that the administrative costs were unjustifiable." *Id.* at 623.

Caligiuri and Van de Voorde fail to make such a showing. In fact, rather than argue that administrative costs were unjustifiably high, Van de Voorde's objection before the district court argued that the notice program was *inadequate*, and she advocated a more expensive option of mailing physical notice to all class members. Therefore, we decline to hold that the district court abused its discretion by including administrative costs in its calculation of attorneys' fees.

Indeed, "the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable." *Buckley*, 849 F.3d at 399 (citation omitted). Caligiuri and Van de Voorde contend that the total amount of the fee award is unreasonable, suggesting that we reduce it to an amount representing 25% of the benefit to the class. We decline to do so for several reasons.

First, the district court did not err in concluding that the circumstances of this case justified a large award. The court determined that seven factors were relevant to deciding whether the requested fee was reasonable:

> (1) the benefit conferred on the class, (2) the risk to which plaintiffs' counsel was exposed, (3) the difficulty and novelty of the legal and factual issues of the case, (4) the skill of the lawyers, both plaintiffs' and defendants', (5) the time and labor involved, (6) the reaction of the class, and (7) the comparison between the requested attorney fee percentage and percentages awarded in similar cases.

*Khoday v. Symantec Corp.*, No. 11-cv-180, 2016 WL 1637039, at *9 (D. Minn. April 5, 2016) (quoting *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010)). The court noted that each of these factors weighed in favor of granting class counsel's request for a fee of one-third of the total settlement fund. Specifically, it found that: (1) "the $60 million cash settlement provides a substantial and immediate benefit to the class"; (2) "[p]laintiffs' counsel, in taking this case on a contingent fee basis, was exposed to significant risk"; (3) "there is every indication that the legal and factual issues are complex"; (4) "on both sides, each of the firms has extensive experience and expertise in complex class actions, including consumer actions"; (5) "Plaintiffs' counsel has expended nearly 20,000 hours to litigate and resolve this dispute"; (6) "[o]ut of a class of nearly fourteen million, only five objections were filed"; and (7) "courts have frequently awarded attorney fees between 25 and 36 percent of a common fund in class actions." *Id.* at *9-11. We find no error in the court's analysis.

Second, the district court verified the reasonableness of the award by cross-checking it against the lodestar method. *See Petrovic*, 200 F.3d at 1157 ("[U]se of the 'lodestar' approach is sometimes warranted to double-check the result of the 'percentage of the [benefit]' method."). The court determined that, "[t]o reach $20 million—the amount (without interest) that would be awarded under the

percentage-of-the-fund method—would require a multiplier of less than two, which is below the range of multipliers commonly accepted in other cases." *Khoday*, 2016 WL 1637039, at *11 (citations omitted). Indeed, this multiplier is well within the range of multipliers awarded in this circuit. *Nelson v. Wal-Mart Stores, Inc.*, No. 05-cv-000134, 2009 WL 2486888, at *2 (E.D. Ark. Aug. 12, 2009) (approving multiplier of 2.5 and citing cases within the Eighth Circuit approving multipliers of up to 5.6). As such, we cannot say that the attorneys' fees in this case were unreasonable. Therefore, the district court did not abuse its discretion in awarding the requested fees.

## C. *Cy Pres* Recipient

"The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means 'as near as possible.'" *In re Airline Ticket Com'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir. 2002). "In the class action context, it may be appropriate for a court to use *cy pres* principles to distribute unclaimed funds." *Id.* "In such a case, the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated." *Id.*

In this case, the district court did not use *cy pres* principles to distribute unclaimed funds. Rather, the district court simply approved a settlement containing terms that provide for a *cy pres* distribution to a specific recipient upon certain conditions. Hence, we review the district court's approval of these terms for an abuse of discretion, *see Marshall*, 787 F.3d at 508, keeping in mind that "a proposed *cy pres* distribution must meet our standards governing *cy pres* awards regardless of whether the award was fashioned by the settling parties or the trial court," *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1066 (8th Cir. 2015) (citation and alterations omitted).

Caligiuri argues that the district court abused its discretion by failing to ensure that the *cy pres* recipient will utilize any remaining funds to benefit the class. However, we do not require *cy pres* recipients to use funds for the direct benefit of the class. Rather, *cy pres* distributions simply "must be for the next best use for indirect class benefit, and for uses consistent with the nature of the underlying action and with the judicial function." *Id.* at 1067 (quotations and alterations omitted).

Here, the *cy pres* recipient is the Electronic Frontier Foundation. As the district court recognized, it "is a global nonprofit whose mission is to defend consumer civil liberties in the digital world, including digital consumer protection." *Khoday*, 2016 WL 1637039 at *16. Because this organization will use the funds for purposes consistent with the nature of the underlying action—protecting consumers' digital rights—it is an appropriate *cy pres* recipient.

Furthermore, any distribution will occur only if any remaining funds are insufficient to pay at least $2 to each approved claimant, satisfying the requirement that "a *cy pres* distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members." *BankAmerica Corp.*, 775 F.3d at 1064 (quotations omitted). Therefore, we find no abuse of discretion in approving the terms of the settlement agreement providing that any minimal remaining funds will be distributed to the Electronic Frontier Foundation.

## D. Service Awards

Courts often grant service awards to named plaintiffs in class action suits to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *See Yarrington*, 697 F. Supp. 2d at 1068 (citations omitted). We review the grant of service awards for abuse of discretion. *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).

Caligiuri argues that the district court abused its discretion in awarding service awards of $10,000 to each of the named plaintiffs because the awards are excessive and unfair to the class. To the contrary, courts in this circuit regularly grant service awards of $10,000 or greater. *See, e.g.*, *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to named plaintiffs); *Zilhaver v. UnitedHealth Group, Inc.*, 646 F. Supp. 2d 1075, 1085 (D. Minn. 2009) (granting named plaintiffs $15,000 each in service awards from common fund settlement of $17,000,000).

Moreover, the district court properly analyzed the relevant factors for deciding whether the service awards were warranted: (1) actions the plaintiffs took to protect the class's interests, (2) the degree to which the class has benefitted from those actions, and (3) the amount of time and effort the plaintiffs expended in pursuing litigation. *U.S. Bancorp*, 291 F.3d at 1038. The court noted that the named plaintiffs "participated in interviews, assisted with discovery, were deposed, participated in conferences, and met with attorneys throughout the litigation process that lasted five years." Further, their efforts "resulted in a settlement that will benefit all class members." *Khoday*, 2016 WL 1637039 at *12. Thus, the court concluded that "service awards of $10,000 are warranted." *Id.* We find no error in the district court's analysis. Therefore, the district court did not abuse its discretion in this regard.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's order.

_____