Bret D. SCHWARTZ, et al., Plaintiffs,

v.

**DALLAS COWBOYS FOOTBALL CLUB, LTD, et al., Defendants.**

**No. Civ.A. 97–5184.**

United States District Court, E.D. Pennsylvania.

March 15, 2005.

Dennis Stewart, Milberg, Weiss, Bershad, Hynes & Lerach, San Diego, CA, Donald E. Haviland, Howard J. Sedran, Levin, Fishbein, Sedran & Berman, Philadelphia, PA, Ira Neil Richards, Trujillo Rodriquez & Richards, Philadelphia, PA, Roberta D. Liebenberg, Fine, Kaplan and Black, Philadelphia, PA, Robert G. Eisler, Lieff Cabraser Heimann & Bernstein, New York, NY, for Plaintiffs.

Anthony Vidovich, Blank Rome, LLP, Philadelphia, PA, Brian S. Paszamant, Richard P. McElroy, Blank Rome Comisky & McCauley, Philadelphia, PA, Jonathan R. Galst, Michael X. Imbroscio, Neil K. Roman, Peter J. Nickles, Timothy C. Hester, Covington & Burling, Washington, DC, for Defendants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

### I.

This is a class action on behalf of a class of approximately 1.8 million purchasers of

a satellite television package of National Football League (NFL) football games known as "NFL Sunday Ticket." Plaintiffs alleged that the defendants' sale of a single package of bundled NFL programming violated the Sherman Act, 15 U.S.C. §§ 1, 2, as well as the Clayton Act, 15 U.S.C. §§ 15, 26. After extensive litigation, the case settled, and the plaintiff class received $7.5 million in cash (in addition to attorneys' fees, costs and costs of administration) plus the benefit of certain injunctive relief. Before the Court now is a motion for distribution of approximately $436,000 in unclaimed funds (claims made but as to which checks issued to the claimants were never cashed).

## II.

### (A).

The plaintiffs propose that the unclaimed funds be allocated as follows: (1) $50,000 to provide the class with a reminder publication notice of the alternative programming ("NFL Sunday Ticket Pay–Per–Day"), (2) $100,000 to the University of Pennsylvania Law School's Clinical Education Program, and (3) the remainder, approximately $286,000, toward the establishment of a high school scholarship program to assist graduating Philadelphia middle school students who have excelled academically but are unable to afford college preparatory, private or parochial high schools.

On the other hand, the settling defendants propose that the funds be distributed to the NFL Youth Education Town Centers ("NFL YET Centers"), which are located in every city that has hosted a Super Bowl for the last twelve years. The NFL YET Centers, operated by the Boys and Girls Clubs of America, but funded in part by the NFL, have a goal of enhancing educational and vocational opportunities for children in low-income neighborhoods, including providing tutorial, counseling and mentoring services, as well as computers and other technological tools. The facilities generally include libraries, classrooms, technology labs and fitness centers.

### (B).

To determine how the funds should be distributed, the parties suggest that the Court apply *cy pres* principles. "The *cy pres* doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing 'the next best use of the funds to satisfy the testator's intent as near as possible.'" *In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 625 (8th Cir. 2001) (*"Airline Ticket I"*) (citation omitted). A court may also utilize *cy pres* principles to distribute unclaimed funds from a class action settlement. *See In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir.2002) (*"Airline Ticket II"*). In so doing, the court should consider (1) the objectives of the underlying statute(s), (2) the nature of the underlying suit, (3) the interests of the class members, and (4) the geographic scope of the case. *See id.*

Given that the settlement agreement in this case did not address the disposition of excess funds, that the defendants have waived any claim to a reversionary interest in the unclaimed funds,[1] and considering the circumstances of this case, the Court will apply *cy pres* teachings in determining how the excess funds should be distributed.

---

**1.** No opinion is expressed as to whether in the absence of waiver, the defendants would be entitled to claim a reversionary interest.

### (C).

To begin, the plaintiffs' proposed distribution must be rejected. First, distribution of the excess funds to a student legal clinic is not needed to promote the policies of the Sherman and Clayton Acts, the underlying statutes at issue in this case. These venerable statutes, particularly the Sherman Act, which has been called "our charter of economic freedom," strive to prevent monopolistic and collusive behavior on the part of economic entities which harms consumers and distorts the operation of a free market.

To this end, the Acts themselves provide powerful incentives for private enforcement through treble damage awards and recovery of attorneys' fees to prevailing parties. This private enforcement scheme has been pursued diligently since at least the time of the Electrical Equipment Cases some forty years ago (which originated in this very district) by a sophisticated plaintiff bar. No suggestion is made that, at this time, meritorious antitrust cases lie dormant for lack of adequate legal representation or that an appreciable increase in enforcement of the antitrust laws is likely to result from bestowing upon a student legal clinic the benefits of the excess funds.

Second, the distribution to either a law school's legal clinic or a charter school for gifted underprivileged students does not touch upon the subject matter of the law suit (football or sports-related activities). Third, there is no evidence that yet a further reminder by way of publication in a newspaper of national circulation will result in the filing of any significant number of additional claims. Fourth, while the class and the geographic scope of the law suit is nationwide, the relief proposed by

plaintiffs would be limited to organizations based in the Philadelphia area.[2]

On the other hand, the defendants' proposal is far from a perfect fit under *cy pres* principles. Clearly, distribution to the NFL YET Centers would not further the goals of the antitrust laws. Yet, at least the defendants' proposed donee has some involvement in the same area of commerce as the subject matter of the law suit (football or sports-related activities), and the ultimate beneficiaries, unlike the ultimate beneficiaries of the plaintiffs' proposed distribution, are located throughout the country. Under the circumstances and given the alternatives presented to the Court, the Court concludes that the NFL YET Centers best satisfy *cy pres* principles.

The Court also concludes that payment of the excess funds to the members of the class is impractical (i.e., after administrative costs, each member would receive approximately $3.50), and that escheat to the federal government would serve no public purpose. Finally, the Court will decline the suggestion that it exercise "discretion" and select a donee other than those suggested by the parties.

### III.

For all the aforesaid reasons, the excess funds in the amount of $436,000 will be paid to the NFL YET Centers. An appropriate order follows.

### *ORDER*

**AND NOW**, this 15th day of March, 2005, upon consideration of the Motion for Distribution of Residual Class Settlement Funds filed by Dallas Cowboys Football Club, Ltd., et al. (doc. no. 196), and Plain-

---

**2.** In connection with the University of Pennsylvania, the Court is sensitive to the appearance of conflict in selecting as the beneficiary of the fund an institution with long-established ties to the Eastern District Bench.

tiffs' response thereto, it is hereby **OR-DERED** that the Motion is **GRANTED**, and all residual class settlement funds are to be distributed to the NFL Youth Education Town Centers.

**IT IS FURTHER ORDERED** that plaintiffs' counsel shall deliver the funds to the appropriate official designated by the NFL Youth Education Town Centers by March 25, 2005.

**AND IT IS SO ORDERED.**