LOKEN, Circuit Judge.
Following the 1998 merger of Nations-Bank and BankAmerica to form Bank of America Corporation, shareholders filed multiple class actions around the country alleging violations of federal and state securities laws. The cases were transferred by the Judicial Panel on Multidistrict Litigation to the Eastern District of Missouri. That court certified four plaintiff classes, two classes of NationsBank shareholders and two classes of BankAmerica shareholders. The transferred cases were resolved when the court approved a $490 million global settlement, overruling an objection by NationsBank class representative David P. Oetting that allocating $333.2 million to those classes was inadequate because their claims had greater merit than the claims of the BankAmerica Classes. In re BankAmerica Corp. Sec. Litig., 210 F.R.D. 694, 704-05, 714 (E.D.Mo.2002), and 227 F.Supp.2d 1103 (E.D.Mo.2002).
After an initial December 2004 distribution, approximately $6.9 million remained in the NationsBank settlement fund. The district court ordered a second distribution of $4.75 million to NationsBank claimants in April 2009. After that distribution, $2,440,108.53 remained. In September 2012, class counsel for the NationsBank Classes, appellee Green Jacobson, P.C., filed a motion to terminate the case with respect to the NationsBank Classes, to award class counsel $98,114.34 in attorneys’ fees for work done after the distribution in December 2004, and to distribute cy pres the remainder of the “surplus settlement funds” to three St. Louis area charities suggested by class counsel. The district court granted the motion over Oet-ting’s objections and ordered “that the balance of the NationsBank Classes settlement fund shall be distributed cy pres to the Legal Services of Eastern Missouri, Inc.” (LSEM). In re Bank of America Corp. Sec. Litig., No. 4:99-MD-1264, 2013 WL 3212514, at *5-6 (E.D.Mo. June 24, 2013) (“Bank of America ”).
Oetting appeals the cy pres distribution and the award of attorneys’ fees. As to the former, he argues the district court abused its discretion in ordering a cy pres distribution because a further distribution to the classes is feasible, and in any event LSEM is unrelated to the classes or the litigation and is therefore an inappropriate “next best” cy pres recipient.[1] We *1063 agree and therefore reverse. As our disposition results in the case not being terminated, we vacate the award of additional attorneys’ fees as premature, leaving that issue to be resolved, consistent with this opinion, when administration of the Nati-onsBank Classes settlement fund can be terminated.
I.
In recent years, federal district courts have disposed of unclaimed class action settlement funds after distributions to the class by making “cy pres distributions.” [2] Such distributions “have been controversial in the courts of appeals.” Powell v. Ga.-Pac. Corp., 119 F.3d 703, 706 (8th Cir.1997). Indeed, many of our sister circuits have criticized and severely restricted the practice. See, e.g., Ira Holtzman, C.P.A. v. Turza, 728 F.3d 682, 689-90 (7th Cir.2013); In re Baby Prods. Antitrust Litig., 708 F.3d 163, 172-73 (3d Cir.2013); In re Lupron, 677 F.3d at 29-33; Nachshin, 663 F.3d at 1038-40; Klier v. Elf Atochem N. Am., Inc., 658 F.3d 468, 473-82 (5th Cir.2011); In re Katrina Canal Breaches Litig., 628 F.3d 185, 196 (5th Cir.2010); Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 434-36 (2d Cir.2007); Wilson v. Sw. Airlines, Inc., 880 F.2d 807, 816 (5th Cir.1989). These contrary authorities were not even acknowledged by Green Jacobson in urging a cy pres distribution in this case, nor by the district court in ordering the requested distribution. Recently, echoing these views, Chief Justice Roberts noted “fundamental concerns surrounding the use of such remedies in class action litigation” while nonetheless agreeing with the denial of certiorari in Marek v. Lane, - U.S. -, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013).
The American Law Institute addressed the issue of Cy Pres Settlements in § 3.07 of its published Principles of the Law of Aggregate Litigation (2010). The ALI recommended:
A court may approve a settlement that proposes a cy pres remedy.... The court must apply the following criteria in determining whether a cy pres award is appropriate:
(a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should *1064 be distributed directly to individual class members.
(b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make¡ such further distributions impossible or unfair.
(c) If the court finds that individual distributions are not viable based upon the criteria set forth in subsections (a) and (b), the settlement may utilize a cy pres approach. The court, when feasible, should require the parties to identify a recipient whose interests reasonably approximate those being pursued by the class. If, and only if, no recipient whose interest reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.
We have approved cy pres distribution of unused or unclaimed class action settlement funds in two cases. In both, the distributions met each of the criteria in ALI § 3.07, even though our decisions antedated the ALI’s work. See Powell, 119 F.3d at 706-07; Airline Tickets I, 268 F.3d at 626; In re Airline Ticket Comm’n Antitrust Litig., 307 F.3d 679, 682-84 (8th Cir.2002) (“Airline Tickets II ”). Similarly, the First Circuit approved a substantial cy pres distribution, concluding it was appropriate in part because the district court’s actions were “entirely congruent” with the then-proposed ALI § 3.07. In re Pharm. Indus. Avg. Wholesale Price Li-tig., 588 F.3d 24, 35 (1st Cir.2009). By. contrast, class counsel and the district court entirely ignored this now-published ALI authority.
Given the substantial history of district courts ignoring and resisting circuit court cy pres concerns and rulings in class action cases, we conclude it is time to clarify the legal principles that underlay our Powell and Airline Tickets decisions:
First, we agree with the Fifth Circuit that, “Because the settlement funds are the property of the class, a cy pres distribution to a third party of unclaimed settlement funds is permissible ‘only when it is not feasible to make further distributions to class members’ .... except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution.” Klier, 658 F.3d at 475 (quoting ALI § 3.07; emphasis added). Here, from the perspective of administrative cost, a further distribution to the class was clearly feasible. Class counsel advised the district court, “Claims Administrator would distribute, free of charge, the remaining Settlement Fund in the amount of $2,445,248.07, for which the administration fee is estimated to be $27,000.”
Class counsel nonetheless contended, and the district court agreed, that “further identification of members for additional distribution would be difficult and costly, considering the time that has passed since the initial distribution.” Bank of America, 2013 WL 3212514, at *3. We disagree. As the Claims Administrator’s cost estimate confirms, lists of NationsBank class members who received and cashed prior distribution checks exist and would form the basis of a further distribution to the classes. The district court previously ordered that no further search need be made for class members whose checks were re *1065 turned undelivered, so that potentially burdensome expense need not be incurred.[3] The district court erred in finding that further distributions would be so “costly and difficult” as to preclude a further distribution; that inquiry must be based primarily on whether “the amounts involved are too small to make individual distributions economically viable.” ALI § 3.07(a). The court’s ultimate conclusion that it was appropriate to order a cy pres distribution to unrelated third party charities was therefore an error of law.[4]
Class counsel also argues that a further distribution to the class is inappropriate because it would primarily benefit large institutional investors, who are less worthy than charities such as LSEM. We flatly reject this contention. It endorses judicially impermissible misappropriation of monies gathered to settle complex disputes among private parties, one of the “opportunities for abuse” that make it “inherently dubious” to apply the cy press doctrine from trust law “to the entirely unrelated context of a class action settlement.” Klier, 658 F.3d at 480 (Jones, C.J., concurring).
The district court also relied on class counsel’s contention that “a third distribution simply would not inure to the benefit of those actually harmed; institutional investors would be the primary recipients of the distribution, and beneficial ownership of the [Bank of America] shares has shifted over time.” Bank of America, 2013 WL 3212514, at *3. This is simply irrelevant. Though the beneficial ownership of outstanding Bank of America shares changes often, no doubt daily, the identity of the NationsBank class members entitled to receive the settlement funds does not change. The possibility that distributing a private settlement to class members long after the events that gave rise to their claims may not “inure to the benefit of those actually harmed” does not give the court presiding over class action litigation power to confiscate the settlement proceeds.
Second, a cy pres distribution is not authorized by declaring, as class counsel and the district court did in this case, that “all class members submitting claims have been satisfied in full.” Id. at *3. It is not true that class members with unliquidated damage claims in the underlying litigation are “fully compensated” by payment of the amounts allocated to their claims in the settlement. See Klier, 658 F.3d at 479 (“the fact that the members of [one subclass] have received the payment authorized by the settlement agreement does not mean that they have been fully compensated”); Masters, 473 F.3d at 434-35 (district court in ordering cy pres distribution failed to consider that full restitution to antitrust plaintiffs includes treble damages); ALI § 3.07, cmt. b (“few settlements award 100 *1066 percent of a class member’s losses, and thus it is unlikely in most eases that further distributions to class members would result in more than 100 percent recovery for those class members”).
In this case, the shareholder lawsuits were filed when, after the merger, Bank of America reported that it had written off $372 million of old BankAmerica loans, and its stock closed down $5.87 that day. 210 F.R.D. at 696-97. The district court approved a global settlement in which plaintiffs would recover “only a percentage of the damages that they sought,” but which was “neither meager nor inadequate, particularly in light of the many hurdles plaintiffs would face if they chose to proceed to trial.” Id. at 701. The April 2002 settlement notice to the class stated: “the settling parties disagree as to both liability and damages, and do not agree on the average amount of damages per share that would be recoverable by any of the Classes.” Thus, the notion that class members were fully compensated by the settlement is speculative, at best.
Third, we reject Green Jacobson’s contention that the cy pres distribution must be affirmed because the district court and this court are bound by language in the settlement agreement stating that the balance in the settlement fund “shall be contributed” to non-profit organizations “determined by the court in its sole discretion.”[5] In the first place, the agreement and order, stating that a cy pres distribu- ■ tion would be made in the district court’s “sole discretion” was contrary to our controlling decisions in Airline Tickets I and Airline Tickets II; that provision was void ab initio. See In re Lupron, 677 F.3d at 38 (“Distribution of funds at the discretion of the court is not a traditional Article III function.”). More importantly, we agree with the Ninth Circuit that “[a] proposed cy pres distribution must meet [our standards governing cy pres awards] regardless of whether the award was fashioned by the settling parties or the trial court.” Nachshin, 663 F.3d at 1040. In arguing to the contrary, Green Jacobson misstates the holding of Klier, which overturned the district court’s cy pres award because “a cy pres distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members.” 658 F.3d at 475. (Quite properly, the district court did not rely on the “sole discretion” language in its earlier distribution order.)
Fourth, Oetting argues that the award must be reversed because Green Jacobson did not notify the class of its motion for a cy pres distribution. We agree that, unless the amount of funds to be distributed cy pres is de minimis, the district court should make a cy pres proposal publicly available and allow class members to object or suggest alternative recipients before the court selects a cy pres recipient. This gives class members a voice in choosing a “next best” third party and minimizes any appearance of judicial overreaching. See In re Baby Prods., 708 F.3d at 180; ALI § 3.07(c), cmt b (encouraging courts to “solicit[ ] input from the parties” regarding cy pres recipients). As we are vacating the cy pres award on other grounds, we need not *1067 address whether class members were denied this opportunity and if so, the question of an appropriate remedy.[6]
Fifth, when a district court concludes that a cy pres distribution is appropriate after applying the foregoing rigorous standards, such a distribution must be “for the next best use ... for indirect class benefit,” and “for uses consistent with the nature of the underlying action and with the judicial function.” In re Katrina, 628 F.3d at 196 (quotations omitted); accord Klier, 658 F.3d at 474; Nachshin, 663 F.3d at 1040; Holtzman, 728 F.3d at 689-90; ALI § 307(c) (“a recipient whose interests reasonably approximate those being pursued by the class”). As we said in Airline Tickets II, 307 F.3d at 682, “the unclaimed funds should be distributed for a purpose as near as possible to the legitimate objectives underlying the lawsuit, the interests of class members, and the interests of those similarly situated.”[7]
Applying this standard, it is clear that LSEM, though unquestionably a worthy charity, is not the “next best” recipient of unclaimed settlement funds in this nationwide class action seeking damages for violations of federal and state securities laws. In approving LSEM, the district court found that “there is no immediately apparent organization that will indirectly benefit NationsBank and BankAmerica class members,” and that LSEM sufficiently approximated the interests of the class because it serves victims of fraud. Bank of America, 2013 WL 3212514, at *4-5. But it is not sufficient to find that no “next-best” recipient is “immediately apparent.” Rather, a district court must carefully weigh all considerations, including the geographic scope of the underlying litigation, and make a “thorough investigation” to determine whether a recipient can be found that most closely approximates the interests of the class. ALI § 3.07, cmt b; see Airline Tickets I, 268 F.3d at 626. The court must look for a recipient that “relate[s] directly to the [ ] injury alleged in this lawsuit and settled by the parties.” Airline Tickets II, 307 F.3d at 683. At oral argument, it became apparent there are non-profit organizations devoted to preventing and aiding the victims of securities fraud, such as the SEC Fair Funds. Those alternatives must be thoroughly explored before concluding that a totally unrelated charity such as LSEM is an acceptable “next best” recipient.
On remand, if any settlement funds remain after an additional distribution to the class, and if the district court concludes after proper inquiry that a cy pres award is appropriate, it must select next best cy pres recipient(s) more closely tailored to the interests of the class and the purposes of the underlying litigation.
II.
Oetting argues the award of supplemental attorneys’ fees must be vacated because Green Jacobson may not seek an additional award when it was al *1068 ready awarded eighteen percent of the NationsBank fund. See In re BankAmeri-ca Corp. Sec. Litig., 228 F.Supp.2d 1061, 1066 (E.D.Mo.2002). In general, post-settlement monitoring is a compensable activity for which counsel is entitled to a reasonable fee. Powell, 119 F.3d at 707. Here, the district court found that the complexities of the case were unforeseeable at the time of the first award and that Green Jacobson was entitled to compensation for its additional work in this case. Bank of America, 2013 WL 3212514, at *6. The record on appeal gives us no reason to disagree.
On the other hand, the fee award was made in an order that accepted class counsel’s suggestion of a cy pres distribution, which was contrary to the interests of the NationsBank Classes, and terminated the case with respect to those Classes. “Where a district court has reason to believe that [class] counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class, we therefore think it appropriate for the court to decrease the fee award.” In re Baby Prods., 708 F.3d at 178. Evaluating whether attorneys’ fees should be reduced for this reason may require the court “to withhold all or a substantial part of the fee until the distribution process is complete.” Id. at 179, quoting Manual for Complex Litigation § 21.71 (4th ed.2008). The factual context here is far different than in Baby Products, and we certainly do not mean to suggest that the final fee award be reduced for this reason. But it may be a relevant factor, and we therefor conclude that review of the award is premature. Accordingly, we vacate the award of supplemental attorneys’ fees, to be redetermined in the exercise of the district court’s discretion upon completion of the additional distribution(s) to the Nations-Bank Classes that result from this decision. See Consol. Beef Indus., Inc. v. N.Y. Life Ins. Co., 949 F.2d 960, 966 (8th Cir.1991) (standard of review).
The Memorandum and Order of the district court dated June 24, 2013, is vacated and the case is remanded for further proceedings not inconsistent with this opinion. We deny the pending F.R.A.P. 10(e) motion.

. Green Jacobson argues that Oetting lacks standing to contest the manner in which the *1063 remainder of the NationsBank settlement fund is distributed because he did not cash his initial distribution check and therefore has no personal interest in the issues on appeal. This contention is frivolous. As class representative, Oetting "assume[d] a position of a fiduciary character” such that he is not only entitled to represent the interests of the class, but has a duty to do so. Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 549, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Therefore, Oet-ting has standing to ensure that the remainder of the fund—now some $2.7 million—is distributed in a manner that is most beneficial to the class. Indeed, not only representative class plaintiffs but also non-named class members who have timely objected may appeal a district court’s order of a cy pres distribution of settlement funds. See In re Lupron Mktg. & Sales Practices Litig., 677 F.3d 21, 29 (1st Cir.2012); Nachshin v. AOL, LLC, 663 F.3d 1034, 1037-41 (9th Cir.2011) (objecting class members successfully challenged the district court's choice of cy pres recipient on appeal).

. "The term 'ey pres’ is derived from the Norman French expression cy pres comme possible, which means 'as near as possible.’ The cy pres doctrine originated as a rule of construction to save a testamentary charitable gift that would otherwise fail, allowing 'the next best use of the funds to satisfy the testator's intent as near as possible.’ ” In re Airline Ticket Comm’n Antitrust Litig., 268 F.3d 619, 625 (8th Cir.2001) (“Airline Tickets I”) (quotation omitted).

. Class members who received but did not cash prior distributions might be included in a further distribution, because attitudes and financial conditions may change over ten years. Obviously, we leave the details of the further distribution, and the question how to dispose of any unclaimed funds after that distribution, to the discretion of the district court.

. The separate BankAmerica settlement fund had $1,376,000 remaining after the second distribution. Counsel for the BankAmerica Classes moved to distribute that money to class members who cashed checks in the 2009 distribution and would receive at least $100 in this final distribution. Class counsel also moved for an award of attorneys' fees and requested that funds remaining after the final distribution be distributed cy pres in four equal parts to LSEM, the Federal Bar Foundation, MFY Legal Services, Inc. in New York charities, and the Kathryn A. McDonald Education Advocacy Project of the New York Legal Aid Society. The district court has not ruled on this motion.

. The contention is factually inaccurate, as the settlement agreement only permitted distribution of remaining funds to charities at the court’s sole discretion. The district court’s June 2004 order authorizing an initial distribution improperly went further, stating that funds remaining "by reason of returned or unpaid checks or otherwise” would be paid to "Authorized Claimants” in a second distribution, and any remaining funds "shall be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) as determined by the court in its sole discretion.”

. We also do not address the distinct question whether Rule 23(e) of the Federal Rules of Civil Procedure requires a district court to identify proposed recipients of any cy pres distribution of unclaimed funds in the original notice of a proposed class settlement. Compare In re Baby Prods., 708 F.3d at 180, with In re Katrina, 628 F.3d at 198; see generally Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1153 (8th Cir.1999) (notice at this stage “need only satisfy the broad reasonableness standards imposed by due process”).

. Because Oetting objected generally to the proposed cy pres distribution, we may review whether the district court correctly interpreted and applied our precedent in Airline Tickets I and II. See Lebron v. Nat’l. R.R. Passenger Corp., 513 U.S. 374, 379, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995).