# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1134

_____

In re: Green Jacobson, P.C.

*Debtor*

------------------------------

David P. Oetting

*Appellant*

v.

David A. Sosne; SKMDV Holdings, Inc.

*Appellee*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2018
Filed: December 28, 2018

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1999, class action suits filed in many districts under the federal securities laws were transferred to the Eastern District of Missouri and captioned In re BankAmerica Corp. Sec. Litig., No. 4:99–MD–1264 (the "MDL Action"). This is the fifth appeal of district court orders arising out of the MDL Action, despite a "global" settlement approved by the district court in 2002 and affirmed by this court in In re BankAmerica Corp. Sec. Litig., 350 F.3d 747 (8th Cir. 2003).

In this appeal, class representative David Oetting appeals the dismissal of the unsecured creditor claim and amended claim he filed in the pending Chapter 7 bankruptcy proceeding of lead class counsel, Green Jacobson, P.C. In re Green Jacobson, P.C., No. 4:15-BK-41404 (Bankr. E.D. Mo.). The bankruptcy court dismissed the claims as either "no longer in issue" or barred by the Missouri statute of limitations. Oetting appealed to the district court. Relying on our decision in Oetting v. Norton, 795 F.3d 886, 891 (8th Cir. 2015), the district court dismissed the appeal, concluding that Oetting as class representative lacked standing because the claims he filed in the bankruptcy court were not ancillary to the MDL Action but were "independent, separate and distinct actions." Oetting appeals. Reviewing *de novo*, we affirm in part, reverse in part, and remand for further proceedings. In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017) (standard of review).

## I. Background.

**A.** Many facts and much of the procedural history relevant to this appeal were summarized in our Norton decision:

> After the merger of NationsBank Corporation and BankAmerica Corporation, shareholders of both companies filed class action lawsuits alleging violations of the federal securities laws. The cases were transferred to the Eastern District of Missouri, where the district court appointed David Oetting as one lead plaintiff of the NationsBank class and the St. Louis law firm of Green Jacobson as lead counsel for the

class. The litigation settled, resulting in a $333 million settlement fund for the NationsBank class. We affirmed the district court's approval of the settlement over Oetting's objection that it was inadequate. In re BankAmerica Corp. Sec. Litig., 350 F.3d 747 (8th Cir. 2003); see Koehler v. Brody, 483 F.3d 590, 598-99 (8th Cir. 2007).

On the recommendation of Green Jacobson, the district court appointed Heffler, Radetich & Saitta, LLP (Heffler), as claims administrator to distribute the settlement fund to class member claimants. During the claims process, an employee of Heffler conspired to submit fifteen false claims against the fund, resulting in the payment of $5.87 million that otherwise would have been paid to members of the class. In 2010, the district court denied Green Jacobson's motion for leave to file a supplemental complaint against Heffler to recover this loss. Oetting subsequently filed a separate action against Heffler on behalf of the NationsBank class that was transferred to and [dismissed by] the Eastern District of Pennsylvania.[1]

After two distributions to the NationsBank class in December 2004 and April 2009, some $2.4 million remained in the settlement fund. Green Jacobson moved to have the remaining $2.4 million distributed *cy pres* and requested an additional award of $98,114.34 in attorney's fees for post-settlement work. Oetting opposed the *cy pres* distribution as contrary to the class members' interests, opposed the award of additional attorney's fees, and argued that Green Jacobson should disgorge $2 million in fees for abandoning the class. Oetting also filed this separate class action, alleging in four counts that class counsel Green Jacobson and three members of the firm (collectively, "Green Jacobson") (i) committed legal malpractice by negligently hiring and failing to supervise claims administrator Heffler, and (ii) breached its fiduciary duty by taking various actions that constituted abandonment of the NationsBank class. The complaint sought damages for causing the $5.87 million fraud loss to the settlement fund and disgorgement of

---

[1] Oetting v. Heffler, Radetich & Saitta, LLP, No. 2:11-CV-4757 [2017 WL 6450557] (E.D. Pa. Dec. 18, 2017).

the entire $60 million in attorneys fees awarded Green Jacobson in the BankAmerica litigation.

In the main action, the district court granted Green Jacobson's motion for a *cy pres* distribution and for a supplemental fee award and denied Oetting's request for disgorgement. In re BankAmerica Corp. Sec. Litig., No. 4:99-MD-1264, 2013 WL 3212514, at *1, *6 (E.D. Mo. June 24, 2013). Oetting appealed. We reversed the *cy pres* award, ordering the district court to allow an additional distribution to the class and then to consider whether a *cy pres* award of any remaining funds would be appropriate. In re BankAmerica Corp. Sec. Litig., 775 F.3d 1060, 1064-67 (8th Cir. 2015). We vacated the supplemental fee award as premature prior to completion of additional distributions that would be made after remand. Id. at 1067-68.

795 F.3d at 887-88 (one footnote omitted). In Norton, answering "unusual questions of standing," we held that Oetting lacked personal standing as well as standing to commence the "separate class action" on behalf of the NationsBank class. Id. at 889-91. We concluded that the class's "independent status" in the MDL Action "did not make it an independent legal entity that may file claims against other parties in a new action, even if the claims arise out of or relate to the main action." Id. at 891.

After our 2015 decision in In re BankAmerica Corp. Sec. Litig., 775 F.3d at 1060 (the "*Cy Pres* Case"), Green Jacobson's Chapter 7 proceeding commenced, triggered by an unrelated state court malpractice judgment. An Order for Relief was entered on April 16, 2015, and appellee David A. Sosne was appointed Chapter 7 Trustee. Oetting as representative of the NationsBank Class then timely filed Claim 1-1, an unsecured claim for $10,503,914.70. Trustee Sosne objected to the claim. Wanting his claims resolved as part of the MDL Action, rather than by the bankruptcy court, Oetting filed a motion to withdraw reference in the district court, see 28 U.S.C. § 157(d), and a motion to abstain or suspend proceedings in the bankruptcy court. The district court denied the motion to withdraw reference, noting that "allowance or

-4-

disallowance of a claim is a core proceeding," 28 U.S.C. § 157(b)(2)(B). That ruling is not at issue. On November 29, 2016, the bankruptcy court denied the motion to abstain or suspend proceedings, and sustained the Trustee's objection to Oetting's Claim 1-1, thereby disallowing the claim. The merits of that decision, and the district court's dismissal of Oetting's appeal of the bankruptcy court's decision for lack of standing, are the subjects of Oetting's appeal to this court.

**B.** In Claim 1-1, Oetting again asserted that Green Jacobson as lead class counsel was negligent in supervising the administration of the distribution of settlement proceeds to the NationsBank class; therefore, he claimed, attorneys' fees awarded to class counsel by the district court should be disgorged, and Green Jacobson is liable to the class for monies owed to the settlement fund. Oetting quantified the total claim of $10,503,914.70 in the following categories:

Claim Calculation

| | |
|---|---:|
| Loss from negligence in supervising settlement distributions | $5,879,073.36 |
| Unreturned fee award vacated in *cy pres* appeal | 98,114.34 |
| Unreturned *cy pres* amounts (held at LSEM) | 2,636,022.35 |
| Subtotal | $8,613,210.05 |
| Disgorgement of 18% of $8,613,210.05 fee: | $1,890,704.65 |

Oetting's amended claim restated the primary amount claimed but acknowledged that the $2,636,022.35 of *cy pres* funds had been returned to and deposited with the district court Clerk as custodian of undistributed settlement proceeds.

In granting the Trustee's motion to disallow Oetting's claims, the bankruptcy court separately addressed each claim category. It concluded the "unreturned" *cy pres* award had been returned and "is no longer in issue." The $98,114.34 post-settlement fee award was vacated by this court in the *Cy Pres* Case, 775 F.3d at 1068;

-5-

though the debtor has not returned this payment to the settlement fund, the district court will ultimately decide whether any supplemental fee is owing to the bankruptcy debtor or must be returned to the fund. The $5,879,073.36 claim for negligent supervision of settlement distributions was ascertainable when the Heffler fraud was detected and is therefore time-barred. Likewise, the $1,890,704.65 claim for disgorgement of 18% of the attorneys' fees awarded Green Jacobson arose from the initial fraudulent claims by Heffler and thus is time-barred by the same statute of limitations. The bankruptcy court did not address Oetting's standing to assert a Chapter 7 unsecured claim as representative of the NationsBank class.

## II. Discussion.

Like the bankruptcy court, we will separately review the dismissal of each of the categories in Oetting's Claim 1-1 in the Chapter 7 proceeding.

A. Claims Based on the *Cy Pres* Case. We agree with the bankruptcy court that the $2,636,022.35 claim for the "unreturned" *cy pres* distribution is "no longer in issue" because, in accordance with our decision in the *Cy Pres* Case, the distribution has been returned by the charity and deposited with the district court Clerk for ultimate distribution for the benefit of the NationsBank class. We also agree with the bankruptcy court's decision to disallow Oetting's $98,114.34 claim for the post-settlement fee award we vacated in the *Cy Pres* Case. Inexplicably, the award has not yet been returned to the settlement fund; the Trustee claims he is holding the money in an account he does not consider part of the bankruptcy estate. But whether any supplemental fee will be awarded to the bankruptcy debtor out of the settlement fund will be decided by the district court in the MDL Action, the forum where Oetting wanted his entire claim determined. We do not understand Oetting to challenge either of these two rulings on appeal. In any event, they are affirmed.

B. The $5,879,073.36 Negligent Supervision Claim. This portion of Oetting's Claim 1-1 seeks to recover the loss to the NationsBank class settlement fund resulting from the false claims fraudulently submitted by a former Heffler employee. The amount claimed for negligent supervision of fund distribution is the same amount claimed in the class action we dismissed for lack of standing in Norton, 895 F.3d at 888. The bankruptcy court dismissed this claim on the merits, concluding it was time-barred by the Missouri five-year statute of limitations, Mo. Rev. Stat. § 516.120(4). See Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) (en banc). The statute "begins to run when damage is sustained and objectively capable of ascertainment." Id. at 497, citing Mo. Rev. Stat. § 516.100. Damage is ascertainable "when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct." Id. Here, the bankruptcy court concluded, the five-year statute began to run no later than September 2009, when Green Jacobson filed a status report in the MDL Action that referred to fraudulent claims in the amount of $5,879,073.36 -- the exact amount Oetting set forth in Claim 1-1. Green Jacobson's bankruptcy petition was filed March 3, 2015, some five years and five months after Oetting knew of the fraudulent settlement claims. Oetting filed Claim 1-1 on May 20, 2015. Thus, this component of Claim 1-1 is time-barred.

On appeal, Oetting does not challenge the bankruptcy court's statute of limitations analysis. Instead, he argues the bankruptcy court "should have granted the abstention motion and allowed the MDL court to sort out these matters, which is the only court that has the authority to award and disgorge fees and should be the court to handle other ancillary claims." We disagree. As the district court ruled in the order which Oetting did not appeal, this part of Claim 1-1 was not an "ancillary" matter in the MDL Action; it was a core proceeding in the Chapter 7 bankruptcy case. That ruling preserved the bankruptcy court's jurisdiction to rule on claim allowance issues. Its decision that this portion of Claim 1-1 is time barred is consistent with Missouri law and must be affirmed.

C.   The $1,890,704.65 "Disgorgement" Claim.   Oetting never coherently explains this final component of his bankruptcy Claim 1-1.  His brief on appeal states: "The total common fund identified in the claim was $10,503,914.70.  The 18% attorneys' fees award comes to $1,890,704.65.  The net amount, never received by the class is $8,613,210.05. . . . It is Oetting's position that fees should not be paid on the sum not received by the class due to the various nefarious events."  In other words, as we understand this statement, Oetting demands that $1,890,704.65 of the attorneys' fees previously awarded by the district court in the MDL Action and paid to class counsel Green Jacobson out of the NationsBank settlement fund now be "disgorged" by the bankruptcy estate because counsel was not entitled to fees for the portion of the settlement fund that class members never received.

The bankruptcy court concluded that this disgorgement claim is not pending in the MDL Action, and it is barred by Missouri's five-year statute of limitations because it derives from the negligent supervision claim.  We emphatically disagree. A state statute of limitations does not govern the exercise of a federal court's equitable power in a class action case to order that attorneys' fees previously awarded by the court should be disgorged.  See Fed. R. Civ. P. 23(h) (the class action court has authority to award reasonable attorneys' fees); Grunin v. Int'l House of Pancakes, 513 F.2d 114, 127 n.13 (8th Cir. 1975) ("the reasonableness of the attorneys' fees is within the overall supervisory review of [the class action] court"); In re Genetically Modified Rice Litig., 764 F.3d 864, 871 (8th Cir. 2014) ("[t]he decision to award or deny attorney's fees rests within the sound discretion of the district court").  Because the district court has an affirmative duty to assure that the award of attorneys' fees is fair and proper, no class member needs standing, or even needs to object, "for the district court to reconsider the amount of attorneys' fees and decide upon an amount." Zucker v. Occidental Pet. Corp., 192 F.3d 1323, 1328 (9th Cir. 1999).  Of course, the

district court in the MDL Action has discretion to determine that laches or preclusion principles bar a class member's untimely or repetitive claim for disgorgement.[2]

For these reasons, the bankruptcy court erred in denying Oetting's motion for abstention on the grounds that the disgorgement claim is not pending in the MDL Action and is barred by Missouri's five-year statute of limitations. But we nonetheless conclude that the bankruptcy court did not err in disallowing this component of Oetting's Claim 1-1 and 1-2. The fatal flaw in the claim is not that our decision in Norton deprived Oetting of standing to assert a disgorgement claim on behalf of the NationsBank class, as the district court erroneously concluded. Rather, the problem is that no disgorgement has been ordered in the MDL Action and therefore the *bankruptcy* claim is premature and lacks supporting foundation.

D. Conclusion. It is distressing that distribution of the NationsBank settlement fund has not been completed sixteen years after the fund was created. Justice delayed is justice denied. Our January 2015 decision in the *Cy Pres* Case provided the district court a framework for completing the task. But since April 2015, part of the problem has been that the Trustee's litigation tactics have hindered and frustrated compliance with our mandate in the *Cy Pres* Case. To right this rudderless ship, we enter the following orders in the bankruptcy case:

---

[2]Oetting objected to the award of attorneys' fees in challenging the MDL settlement approved by this court in In re BankAmerica Corp. Sec. Litig., 350 F.3d 747 (8th Cir. 2003). Then, in the *Cy Pres* Case, the district court denied Oetting's request for disgorgement of awarded attorneys' fees. We vacated that *cy pres* order, 775 F.3d at 1068, which undermined the order's collateral estoppel effect when Oetting again sought disgorgement in Norton, 795 F.3d at 889. We express no view as to whether a new claim for disgorgement in the MDL Action would be precluded, in whole or in part.

1. The Trustee will immediately tender the $98,114.34 unreturned supplemental fee award, together with interest at the post-judgment rate from January 8, 2015, to the district court Clerk for deposit into the NationsBank settlement fund. The bankruptcy court is directed to remove the Trustee if he does not comply with this directive within thirty days.

2. We construe Part I of the bankruptcy court's Order dated November 29, 2016, as lifting the automatic stay in bankruptcy to the extent it might otherwise apply to the completion of the proceedings in the MDL Action mandated by our decision in the *Cy Pres* Case. See 11 U.S.C. § 362(a), (d); see generally In re Blan, 237 B.R. 737, 739-40 (B.A.P. 8th Cir. 1999). We affirm that ruling. It is now law of the case in this Chapter 7 proceeding.

3. In the event the district court in the MDL Action issues a supplemental award of attorneys' fees to Green Jacobson as counsel for the NationsBank class, that award will become property of the bankruptcy estate.

4. In the event the district court in the MDL Action orders the disgorgement of attorneys' fees previously paid to Green Jacobson as counsel for the NationsBank class, that order will become or will form the basis of a claim against the Chapter 7 bankruptcy estate. Any party designated by the district court to represent the NationsBank class in enforcing the court's disgorgement order will have standing to assert that claim in the Chapter 7 case.[3]

5. The disallowance of Oetting's Claim 1-1 and 1-2 is affirmed.

---

[3] It appears that Federal Rule of Bankruptcy Procedure 3002(c)(3) would allow such a new claim to be timely filed, but we express no opinion whether that rule would apply in these circumstances.

6. Each party will bear its own costs on this appeal.

The Orders of the district court dated June 21, 2017 and December 19, 2017 are reversed in part and the case is remanded to the district court with instructions to remand to the bankruptcy court for further proceedings not inconsistent with this opinion.

_____