# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3672
_____

In re: BankAmerica Corporation

------------------------------

David P. Oetting, Class Representative

*Plaintiff - Appellant*

v.

David A. Sosne, Trustee, et al.

*Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 16, 2021
Filed: October 8, 2021

_____

Before LOKEN, KELLY, and ERICKSON, Circuit Judges.

_____

LOKEN, Circuit Judge.

In 1999, shareholders of NationsBank and BankAmerica filed securities law
class actions after the publicly held companies merged to form Bank of America
Corporation. The cases were transferred to the Eastern District of Missouri and

captioned In re BankAmerica Corp. Securities Litigation, No. 4:99-MD-1264. A global settlement was approved by the court in 2002. It included an award of approximately $58 million in fees to the attorneys appointed to represent the NationsBank Class. Almost two decades later, attorney David Oetting, one of the lead plaintiffs for the class, filed a motion to reconsider the fee award and to order disgorgement of some $38 million in fees previously paid to NationsBank Class Counsel based on their poor performance, mismanagement of the settlement fund, and abandonment of the class. The district court[1] denied Oetting's motion, concluding it was barred by the equitable doctrine of laches. Oetting appeals. The appellees are David Sosne, the Chapter 7 bankruptcy trustee for Green Jacobson, P.C., former Lead Counsel for the NationsBank Class, four law firms appointed by the district court in April 1999 to serve as co-lead counsel or executive committee members, and two individual former members of the Green Jacobson firm. We affirm.

## I. Background

The long history of the class action settlement and settlement fund distribution are well documented in past opinions of the district court and this court. For recent opinions that provide additional procedural background for this appeal, see In re Green Jacobson, P.C., 911 F.3d 924, 926-929 (8th Cir. 2018); Oetting v. Norton, 795 F.3d 886, 887-89 (8th Cir. 2015); and In re BankAmerica Corp. Sec. Litig., 775 F.3d 1060, 1062 (8th Cir. 2015) ("The *Cy Pres* Order").

After three years of litigation followed by mediation on the eve of trial, class counsel and defendants proposed a $490 million "global settlement" that included $333 million for the NationsBank Class. The district court approved the settlement over the objection of two lead plaintiffs, Oetting and John Koehler, In re

---

[1]The Honorable Catherine D. Perry, United States District Judge for the Eastern District of Missouri.

BankAmerica Corp. Sec. Litig., 227 F. Supp. 2d 1103, 1108 (E.D. Mo. 2002), rejecting their contention the settlement inadequately compensated the NationsBank Class without their approval, In re BankAmerica Corp. Sec. Litig., 210 F.R.D. 694, 704-06 (E.D. Mo. 2002). Oetting and Koehler appealed. We affirmed, noting their "estimations of the settlement value of the case were so high as to be 'bordering on fantasy.'" In re BankAmerica Corp. Sec. Litig., 350 F.3d 747, 750 (8th Cir. 2003).

The district court appointed Green Jacobson administrator of the settlement fund. At Green Jacobson's urging, Heffler, Radetich & Saitta, LLP ("Heffler"), was appointed claims administrator. As part of the settlement approval process, the district court approved attorneys' fees to be paid to NationsBank Class Counsel out of the settlement fund. Counsel requested an award equal to 25% of the Class's net recovery, more than four times the fee that would be awarded under an alternative "lodestar" approach. The district court agreed that a "percentage-of-the-recovery" approach was equitable and appropriate but reduced the award to 18% of the net recovery to the NationsBank Class, approximately $58,831,000 plus interest. In re BankAmerica Corp. Sec. Litig., 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002). Oetting and Koehler did not object to this award. They sought fees for objecting to the settlement, which the district court denied because their efforts "enhanced neither the value of the settlement fund nor the adversarial process." Id. at 1067-68.

Oetting and Koehler did not appeal the fee award. Two years later Koehler, represented by Oetting, filed an action against class counsel in the Southern District of New York, alleging counsel breached their fiduciary duties in negotiating an inadequate settlement. Koehler sought relief that included compensatory and punitive damages and "disgorgement of attorney fees." Koehler v. Brody, 483 F.3d 590, 594-95 (8th Cir. 2007). The New York court transferred the case to the Eastern District of Missouri where it was assigned to Judge Nangle, presiding over the consolidated class action cases. The district court dismissed the action. Koehler v. Green, No. CV 405-367, 2006 WL 5605002 (E.D. Mo. Apr. 20, 2006). We affirmed:

Koehler cannot renew his attacks on the quality of the representation or the settlement amount in this collateral action. Nor can he now attempt to divest the attorneys of their court awarded fees.

Koehler, 483 F.3d at 599.

The first distribution to the NationsBank Class from the settlement fund began in 2004. Oetting did not cash his check. In 2008, before a second distribution, it was discovered that an employee of Heffler helped defraud the settlement fund of some $5.8 million in what came to be called the "Penta fraud." In 2010, Green Jacobson filed a supplemental complaint against Heffler on behalf of the class; the district court concluded it would be more appropriate to file a separate action against Heffler. In re BankAmerica Corp. Sec. Litig., No. 4:99-MD-1264, 2010 WL 4622530, at *1 (E.D. Mo. Nov. 5, 2010). Oetting then filed a class action against Heffler, which was transferred to the Eastern District of Pennsylvania and later dismissed as time-barred. Oetting v. Heffler, Radetich & Saitta, LLP, No. 11-4757, 2017 WL 6450557, at *11 (E.D. Pa. Dec. 18, 2017).

The second distribution in 2009 left some $2.5 million remaining in the fund. In 2012, Green Jacobson moved to distribute the remaining amount *cy pres* and to terminate the case with an award of $98,114.34 in supplemental attorneys' fees for work done after the first distribution. Oetting opposed the *cy pres* distribution and the award of supplemental fees, arguing Green Jacobson should disgorge $2.129 million in fees already paid, representing 18 percent of the fund's current balance plus the amount lost to the Penta fraud. The district court granted Green Jacobson's motion, rejecting Oetting's call for disgorgement. Oetting appealed. We reversed, concluding a *cy pres* distribution would be contrary to the interests of the NationsBank Class. We vacated the award of supplemental attorneys' fees as premature. The *Cy Pres* Order, 775 F.3d at 1063-68.

-4-

In 2013, Oetting, represented by his attorney in this case, Frank H. Tomlinson, filed a separate class action against Green Jacobson on behalf of the NationsBank Class alleging legal malpractice by negligently hiring and supervising Heffler, and breach of fiduciary duty by actions constituting abandonment of the class. The complaint sought damages for causing $5.87 million in fraud loss to the settlement fund and disgorgement of the entire $58 million in attorneys' fees awarded in 2002. The district court dismissed the complaint, concluding Oetting lacked standing to represent the Class because he did not cash his settlement check, and the disgorgement and abandonment claims were barred by the collateral estoppel effects of the court's *cy pres* order then pending on appeal. On appeal, we affirmed the dismissal for lack of jurisdiction because Oetting was not a member of the Class (he had not cashed his distribution check), and the Class could not assert these claims as an independent legal entity. Norton, 795 F.3d at 890-91.

After The *Cy Pres* Order in 2015, an unrelated malpractice judgment pushed Green Jacobson into Chapter 7 bankruptcy, and Sosne was appointed Trustee for the bankruptcy estate. The district court removed Green Jacobson as Lead Counsel for the NationsBank Class and, at Oetting's urging, appointed Tomlinson as Lead Counsel. Oetting filed a bankruptcy claim for approximately $10.5 million, including disgorgement of 18% of Green Jacobson attorneys' fees for the alleged losses caused by its negligent supervision of settlement fund distributions (nearly $1.9 million). We affirmed dismissal of the entire claim. Regarding disgorgement, we held that "the problem is that no disgorgement has been ordered in the MDL Action and therefore the *bankruptcy* claim is premature and lacks supporting foundation." In re Green Jacobson, 911 F.3d at 930. Noting that Oetting had twice before objected to the fee award and once requested disgorgement, we ruled that, "[o]f course, the district court in the MDL Actions has discretion to determine that laches or preclusion principles bar a class member's untimely or repetitive claim for disgorgement." Id. at 930 & n.2. Our detailed order included: "4. In the event the district court in the MDL Action orders the disgorgement of attorneys' fees previously paid to Green Jacobson

as counsel for the NationsBank class, that order will become or will form the basis of a claim against the Chapter 7 bankruptcy estate." Id. at 931.

Back in the district court, Oetting asked for a briefing schedule to address whether the 2002 fee award should be reduced. The court set a deadline of August 20, 2019 for the filing of motions to disgorge. On that day, Oetting filed the motion here at issue, entitled "Motion for Redetermination of Attorneys' Fees Pursuant to the PSLRA, Forfeiture, and Disgorgement." For the first time, he requested that all NationsBank Class Counsel, not just Green Jacobson as Lead Counsel, forfeit and disgorge all fees received above what they would have received had the district court adopted the "lodestar" approach in 2002, some $38 million. As explained in attorney Tomlinson's Memorandum in Support, class counsel took actions that were "flawed, indeed hostile to the interests of [the Class]," namely, moving to have $5.8 million of fraudulent claims paid without sufficient review; allowing the statute of limitations to run on a claim against Heffler and "failing to make any effort to recover stolen monies"; Lead Counsel attempting to donate the settlement fund to a charity contrary to the interests of the NationsBank Class; Lead Counsel filing for bankruptcy before the case was completed; and inserting an unauthorized "exculpatory clause" that caused Oetting not to cash his settlement distribution checks.

The district court denied the motion, concluding this new, greatly expanded claim for disgorgement was barred by the equitable doctrine of laches.

## II. Discussion

Oetting labeled his motion a Motion for Redetermination of the attorneys' fees awarded by the district court in 2002. It is certainly true, as we noted in affirming the denial of Oetting's prior bankruptcy claim for disgorgement, that a federal court has "equitable power in a class action case to order that attorneys' fees previously awarded by the court should be disgorged," and "an affirmative duty to assure that the

award of attorneys' fees is fair and proper." In re Green Jacobson, 911 F.3d at 930 (citations omitted). But Oetting cited no case law or other authority to the district court, or to this court on appeal, standing for the proposition that a district court supervising the management and distribution of an approved settlement fund has an ongoing, affirmative obligation to *sua sponte* "redetermine" attorneys' fees initially awarded and affirmed on appeal, based on its hindsight observations of that process.[2] In our view, explicitly stating the proposition in this manner, which Oetting and Tomlinson have carefully avoided, establishes that it is unreasonable and impractical.

On appeal, without stating the proposition, Oetting argues it can be derived from a statute he terms a "lookback" provision in the Private Securities Litigation Reform Act of 1995 ("PSLRA"):

**(6) Restrictions on payment of attorneys' fees and expenses**

Total attorney's fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest *actually paid to the class*.

---

[2]Zucker v. Occidental Pet. Corp., 192 F.3d 1323 (9th Cir. 1999), is an example of a case in which the district court's obligation "to assure that the amount [of class action] attorneys' fees are fair and proper" extended to a "redetermination" of an initial fee award. Id. at 1328. The circuit court vacated and remanded the initial, contested award because the district court's reasoning was not adequately explained. On remand, the district court reduced the fee by nearly two-thirds, primarily because "the class members got no cash." Id. at 1324. Class counsel appealed, arguing the objector had no financial interest in the issue and therefore lacked standing. The Ninth Circuit affirmed. "Because the district court had the authority and duty to pass upon the fairness of the attorneys' fees settlement independently of whether there was objection, we need not decide whether the objector had standing." Id. at 1329.

15 U.S.C. § 78u-4(a)(6) (emphasis added). Construing the amount "actually paid to the class" as imposing a lookback obligation, Oetting argues his Motion for Redetermination should not have been subject to the district court's laches analysis: "The PSLRA lookback has . . . never been addressed by the District Court and should not have to be the subject of a motion by the plaintiff class."

No court has construed § 78u-4(a)(6) as a "lookback" provision in the manner Oetting urges. Rather, it has consistently been viewed as the provision by which "the percentage-of-recovery method was incorporated in the [PSLRA]." In re Rite Aid Corp. Sec. Litig., 396 F.3d 294, 300 (3d Cir. 2005); see Union Asset Mgmt. Holding A.G. v. Dell, Inc., 669 F.3d 632, 643 & n.33 (5th Cir. 2012); Powers v. Eichen, 229 F.3d 1249, 1258 (9th Cir. 2000). This interpretation is confirmed by the PSLRA's legislative history. The House conference report explained that § 78u-4(a)(6) "limits the award of attorney's fees and costs to counsel for a class . . . to a reasonable percentage of the amount of recovery *awarded to the class*." H.R. Rep. No. 104-369, at 36 (1995) (Conf. Rep.), as reprinted in 1995 U.S.C.C.A.N. 730, 735 (emphasis added); cf. Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 437-38 (2d Cir. 2007). In this case, § 78u-4(a)(6) did not require the district court to redetermine *sua sponte* the class counsel fees initially awarded, even if part of the approved settlement was arguably not "actually paid" to the class in the distribution process. Thus, the court properly subjected Oetting's Motion for Redetermination to "laches and preclusion principles," as we noted in In re Green Jacobson, 911 F.3d at 930 & n.2.

The equitable doctrine of laches "requires a showing that the plaintiff was guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Midwestern Mach. Co. v. Nw. Airlines, Inc., 392 F.3d 265, 277 (8th Cir. 2004) (quotation marks omitted). Like statutes of limitations that provide a legal defense, laches "is premised upon . . . the desire to avoid unfairness that can result from the prosecution of stale claims." Goodman v. McDonnell Douglas Corp., 606 F.2d 800, 805 (8th Cir. 1979). Here, there are there are three overriding factors that

persuade us the district court did not abuse its discretion in applying laches to bar Oetting's equitable disgorgement claims. See Brown-Mitchell v. Kansas City Power & Light Co., 267 F.3d 825, 827 (8th Cir. 2001) (standard of review).

First, although Oetting had raised disgorgement issues in earlier proceedings, he had never asserted the claim that all class counsel who were awarded fees in 2002, not just Lead Counsel Green Jacobson, should be required to disgorge all fees paid above a "lodestar" amount the district court had used as a comparative benchmark in reducing the percentage-of-recovery fee award from 25% to 18% of the NationsBank Class's net recovery from the global settlement. To our knowledge, no class member or involved attorney took the position that a "lodestar" amount was the proper method for determining reasonable fees, rather than a percentage of the Class's recovery as initially requested by class counsel, until Oetting filed his Motion for Redetermination in August 2019. Not only is the delay in asserting that claim manifestly unreasonable and inexcusable, the prejudice that would result from ordering four law firms to disgorge monies distributed to their present and former members some twenty years ago is obvious and in our view dispositive.

Second, in arguing that the initial approved fee awards should be dramatically reduced because class counsel took actions that were "flawed, indeed hostile to the interests" of the Class, Oetting and Tomlinson cite actions that Oetting unsuccessfully challenged *at the time they occurred*, challenges that often included limited requests for disgorgement focused on the specific action in question: collaterally attacking the fee award in a 2004 class action filed in the Southern District of New York; arguing in 2012 that Green Jacobson should disgorge $2.129 million in fees already paid for urging *cy pres* distribution, causing Penta fraud losses, and seeking an award of supplemental fees; filing a class action against Green Jacobson in 2013 seeking $5.87 million in fraud damages to the settlement fund and disgorgement of the entire attorneys' fee award to Green Jacobson in 2002 for negligently hiring and supervising Heffler and breach of fiduciary duty for abandoning the class; and filing a $10.5

million bankruptcy claim in 2015 that included disgorgement of 18% of Green Jacobson attorneys' fees for negligent supervision of settlement fund distributions. Every one of these contentions was rejected by the district court and/or this court. Four wrongs do not make a right.

Third, we agree with the district court that the challenged actions, from the inclusion of an exculpatory clause in the settlement checks to opposing *cy pres* distribution, occurred seven to fifteen years before Oetting sought total disgorgement in his Motion for Redetermination. We also agree that Oetting's failure to seek disgorgement in the proper manner and before the proper court was inexcusable delay, particularly when bankruptcy trustee Sosne made interim distributions to Green Jacobson creditors based on Oetting's rejected bankruptcy claim that included only a $1.9 million claim for disgorgement. If the district court ordered disgorgement, a bankruptcy claim on behalf of the NationsBank Class for Green Jacobson's share of a $38 million disgorgement would require the trustee to recover money from creditors who were thereby overpaid, creating a potential for new lawsuits and more delay in both proceedings. Oetting argued that the automatic stay in the Green Jacobson bankruptcy proceeding excused his delay. The district court reasonably concluded he could have sought full disgorgement before the bankruptcy or filed a larger disgorgement claim in the bankruptcy proceeding.

For these reasons, and the additional reasons stated in the district court's Memorandum and Order, we conclude the court did not abuse its discretion in applying laches to bar Oetting's Motion for Redetermination.

Finally, Oetting argues that the three district judges who have presided over In re BankAmerica Corp. Securities Litigation, No. 4:99-MD-1264 -- each of whom is a former Chief Judge of the Eastern District of Missouri -- have failed to honor "the dictates of the PSLRA" and their ongoing fiduciary duties to the class for nearly thirty years, beginning with "the approval of a purported settlement which was entered into

-10-

over the objections of the three class representatives," and ending with failure to order the disgorgement of fees by class counsel who abandoned the class. We reject this outrageous contention, which is premised on legal theories and positions taken by Oetting and Tomlinson over the years that were rejected by the district court and by this court as contrary to the best interests of the class.

The district court has not failed to honor its ongoing fiduciary duty to the class in overseeing a complex settlement fund distribution made more complex and dilatory by the contentious actions of its participants, and the court has not allowed the class to be abandoned by those responsible for distributing the settlement fund. As for failing to honor "the dictates of the PSLRA," a major purpose of that statute was to "protect[] investors who join class actions against lawyer-driven lawsuits by giving control of the litigation to lead plaintiffs with substantial holdings of the securities of the issuer." H.R. Rep. No. 104-369, at 3, as reprinted in 1995 U.S.C.C.A.N. at 731. Attorney Oetting was not a substantial shareholder and therefore was not "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B). Viewed in hindsight -- always a distorting perspective -- it appears that Oetting as one of seven class representatives has himself gone to great lengths to make this a "lawyer-driven lawsuit." We hope district courts in this circuit will bear this in mind should Oetting seek to be appointed a lead plaintiff in future class actions subject to the PSLRA.

### III. Conclusion

For the forgoing reasons, we affirm the Order of the district court dated November 12, 2019. We grant Appellee David Sosne's and Appellant David Oetting's motions to supplement the record. We deny Appellee Chitwood Harley's motion to supplement the record.

_____

-11-